

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00278-CV

## IN THE ESTATE OF JULIA LOPEZ, DECEASED

**From the County Court at Law No. 2
McLennan County, Texas
Trial Court No. 2014 0322 PRl**

## MEMORANDUM OPINION

In ten issues, appellant, Andrew Lopez, challenges the trial court's judgment

entered after a jury trial awarding $412,580 in actual damages, awarding $1,578,543 in

exemplary damages, and imposing a constructive trust on real property in favor of

appellee, Jacob George Straub, as dependent administrator of the Estate of Julia Lopez.

We affirm.

### I.   BACKGROUND

Andrew, who took over the family's real-estate business upon the death of his

mother and father, is alleged to have commingled funds and breached fiduciary duties

owed to the estate and to the family real-estate business.  Specifically, in this suit, Straub

alleged a breach-of-fiduciary duty claim against Andrew and sought: (1) a judicial declaration that a June 21, 2013 deed from mother Julia to Andrew was void; (2) a constructive trust on properties described as "wrongfully acquired properties," or, in the alternative, an award of damages in lieu of a constructive trust; (3) forfeiture of all management fees received by Andrew; (4) denial of any claim by Andrew for reimbursement of expenses allegedly incurred in connection with the estate; (5) an award of actual and exemplary damages; and (6) attorney's fees.

Andrew responded by filing a general denial and asserted the affirmative defense of statute of limitations. Andrew also filed a counterclaim seeking a judicial declaration that his claims against the estate, which were denied by Straub, were valid.

This matter was tried to a jury, which returned a verdict primarily in favor of Straub. The parties filed competing motions for judgment and for judgment notwithstanding the verdict. The trial court entered judgment primarily in accordance with the jury's verdict awarding Straub, on behalf of the estate, $412,580 in actual damages, which included a $59,854 offset in Andrew's favor for one Authenticated Claim; $1,578,543 in exemplary damages; imposing a constructive trust on several properties; and awarding pre- and post-judgment interest.. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his first, fourth, fifth, sixth, seventh, and tenth issues, Andrew challenges the sufficiency of the evidence supporting numerous aspects of the trial court's judgment.

Specifically, Andrew contends that the evidence is insufficient to support: (1) the award of $224,000 in property-management fees; (2) the finding of wrongfully-acquired funds; (3) the finding of wrongfully-acquired real estate; (4) the imposition of a constructive trust; (5) the finding regarding lost rent; and (6) the jury's finding regarding additional offsets and Andrew's authenticated claims.

## A. Standard of Review

When a party raises a legal-sufficiency challenge to an issue for which it did not have the burden of proof, "it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). In applying this standard,

> [w]e will sustain a legal[-]sufficiency challenge if the evidence offered to prove a vital fact is no more than a scintilla. In conducting our review, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review.

*Id.* (citations & quotations omitted). We defer to the jury's determination of the credibility of the witnesses and the weight to accord their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *see also Republic Petroleum v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

In a factual-sufficiency review, we consider all of the evidence in the record in a neutral light and set aside the jury's verdict only if it is so contrary to the overwhelming

weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *see Republic Petroleum*, 474 S.W.3d at 433. Jurors are entitled to resolve inconsistencies in witness testimony, whether those inconsistencies result from the contradictory accounts of multiple witnesses or from internal contradictions in the testimony of a single witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see Republic Petroleum*, 474 S.W.3d at 433.

## B.     Property-Management Fees

In his first issue, Andrew contends that there is no evidence to support the jury's finding of $224,000 in property-management fees that were paid to Andrew from September 2003 through December 2012, for managing Julia's real estate. Andrew argues that there is no evidence to support this finding because the undisputed evidence shows that the management fees were not paid in cash for each and every month, and because Andrew testified at trial that he had not been paid $74,100 in management fees owed during this period.

It is undisputed that Andrew was to be paid $2,000 per month to manage Julia's real estate. The jury's answer to this issue is merely the multiplication of Andrew's $2,000 monthly management fee by the number of months that passed during the relevant time period. Because 112 months elapsed between September 2003 (the date of death of Andrew's father, Gabriel) and December 2012, and because the undisputed evidence in the record shows that Andrew was to be paid $2,000 a month in management fees,

viewing the evidence in the light most favorable to the challenged ruling, we conclude that there was some evidence to support the jury's calculation of $224,000 in management fees. *See Graham Cent. Station, Inc.*, 442 S.W.3d at 263.

Nevertheless, Andrew contended at trial and argues on appeal that Julia failed to pay him $74,100 in management fees and that her conveyance of several properties referred to as the "8th Street Properties" located in Waco, Texas, served to compensate him for these unpaid management fees, as well as other items he paid for on her behalf.[1] In support of his testimony, Andrew offered a series of handwritten notations accompanying a 2012 McLennan County tax statement.

However, the jury heard conflicting evidence regarding the reason for Julia's conveyance of the "8th Street Properties" to Andrew. In particular, Straub offered a video recording of Julia in which she explained the purpose of the conveyance of the "8th Street Properties," and Rodney L. Brown, a retired CPA, testified that he watched Julia's video and that Julia intended for the properties to be conveyed to Andrew so that he could fix them up, not to compensate Andrew.

The jury was free to disbelieve Andrew's testimony about non-payment of management fees and disregard the handwritten notations he made on the 2012 McLennan County tax statement. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722

---

[1] As noted in Andrew's brief, on June 21, 2013, Julia deeded the following properties to Andrew: 602 South 8th Street, 606 South 8th Street, 608 South 8th Street, 610 South 8th Street, and 916 Clay Avenue. These properties are commonly referred to as the "8th Street Properties" in this case.

S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter v. Ford Motor Co.*, 305 S.W.3d 202, 206 (Tex. App.—Waco 2009, no pet.) ("'Jurors are the sole judges of credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.'" (quoting *City of Keller*, 168 S.W.3d at 819)). Viewing the evidence in a neutral light, we cannot say that the jury's answer to question three is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also Republic Petroleum*, 474 S.W.3d at 433. As such, we overrule Andrew's first issue.

## C. Wrongfully-Acquired Funds

In his fourth issue, Andrew challenges the sufficiency of the evidence supporting the jury's answer to question four, part one, finding as a measure of damages for breach of fiduciary duty the amount of $207,754 in wrongfully-acquired funds. We disagree.

First, Andrew challenges CPA Rodney Brown's reference to the funds on hand at the time of Andrew's father, Gabriel's, death in 2003, because Andrew believes that those funds belonged solely to Julia. However, the testimony showed that Gabriel earned those funds in connection with the family business, which Andrew characterized as a full-time job. At least a portion of these funds were used to continue operating the business. The record shows $121,946 in funds on deposit at Gabriel's death. Andrew's "cash flow"

analysis showed a net income of $87,762 from the family business from January 2005 through December 2013.

Andrew argues that the $121,946 in funds, as well as the funds depicted in the "cash flow" analysis, were deposited in Julia's account at Genco, similar to her social-security checks. However, Andrew was a signatory on Julia's accounts at Genco and Community Bank, and he commingled funds between his personal account and Julia's account without proper documentation. Specifically, Brown testified to the following regarding the commingling of funds: "There's money that is transferred back and forth between his [Andrew's] personal account and the mother's account that there were no books. Since he had no books, there's no way that that was being recorded except by him on a piece of paper that he would furnish periodically." In addition, Andrew admitted that he used his Visa credit card for both personal and business expenses. Moreover, Andrew's Authenticated Claim 2 showed multiple transfers of funds between his personal account and Julia's account.

Because there is evidence in this record that Andrew commingled funds, he bore the burden of demonstrating that the so-called wrongfully-acquired funds were his. *See Lundy v. Masson*, 260 S.W.3d 482, 505 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (noting that Texas courts apply a rebuttable presumption of unfairness to transactions between a fiduciary and a party to whom he owes a duty of disclosure and that a profiting fiduciary bears the burden of showing the fairness of the transactions); *W.L. Lindemann*

*Operating Co. v. Strange*, 256 S.W.3d 766, 782 (Tex. App.—Fort Worth 2008, pet. denied) ("One who wrongfully permits the property of another to become so intermingled and confused with his own property as to render it impossible to identify the goods of each is under the burden of disclosing such facts as will insure a fair division, and if he fails or refuses to do so, the combined property or its value will be awarded to the injured party. In applying the commingling rule, we hold one who willfully commingles to a strict burden; however, the application of such a burden is not appropriate until the facts establish that there has been a commingling." (internal citations & quotations omitted)); *Cole v. Wadsworth*, 326 S.W.2d 928, 931 (Tex. Civ. App.—Eastland 1959, writ ref'd n.r.e.) ("[W]hen it has been established that an administrator has purchased property with his funds comingled with funds of the estate that the administrator then has the burden of showing what portion is his and if he does not then the entire property so purchased will be awarded to the estate; but, this rule has no application until it is established that there has been such commingling.").

Next, Brown referenced a $28,700 loan, which Andrew asserts was "accounted for." At trial, Andrew only accounted for $20,668 of those funds. Nevertheless, Andrew stated that Julia authorized this loan to reimburse him for a payment of property taxes. In support of this contention, Andrew offered a copy of a check in this amount and noted that this was evidence of him paying the property taxes. There is nothing on the check indicating that it was actually negotiated, nor is there a receipt or other documentation

showing that Andrew actually paid the taxes. Furthermore, there is no evidence of any agreement between Julia and Andrew regarding this loan and the payment of any property taxes. In essence, other than Andrew's testimony and this check, there is no evidence to support Andrew's argument regarding the $28,700 loan.

The same is true for the other purported loans. Again, because he commingled funds, Andrew had the burden of demonstrating which funds in these various accounts were his. *See Lundy*, 260 S.W.3d at 505; *Strange*, 256 S.W.3d ay 782; *Cole*, 326 S.W.2d at 931. He did not meet his burden regarding these loans.

Additionally, as noted earlier, Andrew testified that he deposited between $1,400 and $1,500 monthly into Julia's savings account from rent proceeds. Using the lower figure, this would amount to $16,800 annually, or $172,200 from October 2003 to December 2013. Andrew's own evidence shows that he only deposited $131,940 into Julia's savings account during this period. Accordingly, the jury could have concluded that Andrew withheld $40,260 ($172,200-$131,940) in rents.

Here, the jury determined that Andrew wrongfully acquired $207,754 from Julia. The evidence demonstrated: (1) $87,762 in net income from the family business; (2) $121,946 in funds on deposit at the time of Gabriel's death; (3) $11,863 in unaccounted-for loan proceeds; and (4) $40,260 in withheld rents.

Based on the foregoing, we conclude that there is some evidence to support the challenged finding regarding wrongfully-acquired funds. *See Graham Cent. Station, Inc.*,

442 S.W.3d at 263; *see also MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 408 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Under Texas law, whether to award damages and how much is uniquely within the factfinder's discretion. A jury thus has broad discretion to award damages within the range of evidence presented at trial. . . . There is no requirement that the evidence show precisely how the jury arrived at the specific amount awarded. . . . However, a jury must have an evidentiary basis for its findings." (internal citations & quotations omitted)). Moreover, we cannot say that the jury's finding regarding the wrongfully-acquired funds is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also Republic Petroleum*, 474 S.W.3d at 433. Accordingly, we overrule Andrew's fourth issue.[2]

## D.     Wrongfully-Acquired Real Estate

In his fifth issue, Andrew complains that the evidence is insufficient to support the jury's answer to question four, part two, finding damages for "wrongfully acquired real estate" in the amount of $263,817. We disagree.

At trial, the jury heard evidence regarding the value of the "8th Street Properties," as well as ten tracts purchased by Andrew after his divorce. The combined value of the

---

[2] Andrew raises a limitations argument in this issue. However, we conclude that this argument was waived by Andrew's failure to request and obtain a jury answer on this affirmative defense. *See* TEX. R. CIV. P. 279; *see also Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876, 880-81 (Tex. 1962); *Roberts v. Holmes*, 412 S.W.2d 947, 949 (Tex. Civ. App.—Eastland 1966, no writ).

"8th Street Properties" was $130,770, and the combined value of the ten tracts acquired by Andrew after his divorce was $133,047, as detailed in Plaintiff's Exhibit 31.

Regarding the combined value of the "8th Street Properties," Andrew does not challenge the specific valuation of the properties; rather, he argues that these properties were not wrongfully-acquired by a breach of fiduciary duty because Julia deeded him the properties.

As we noted above, the record contains testimony from CPA Rodney Brown, who testified that he watched a video produced by Julia, where she stated that she intended to convey the properties to Andrew so that he could fix them up for Julia's benefit, not to compensate Andrew. And while Andrew offered handwritten notations accompanying a 2012 McLennan County tax statement regarding his ownership of the "8th Street Properties," there was conflicting evidence in the record regarding Julia's reason for conveying the "8th Street Properties," and the jury was free to disbelieve Andrew's evidence regarding his ownership of the properties and his explanation for the conveyances. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206. We therefore reject Andrew's complaint regarding the sufficiency of the evidence supporting the jury's award pertaining to the "8th Street Properties."

Nevertheless, the majority of Andrew's complaint in this issue focuses on the property he acquired after his divorce. On appeal, Andrew alleges the following:

[I]t is undisputed that funds for purchase of the vacant lot at 614 South 8th Street came from a cash advance on Andrew's credit card. . . . Andrew purchased his home at 620 South 8th Street with $53,520 borrowed from Community Bank, as his personal residence. . . . There is no dispute that funds for purchase of Andrew's home came from funds he borrowed. . . . Funds for purchase of 823 Clay Avenue . . . came from repayment of the 2013 property taxes Andrew paid for Julia. . . . Three of the properties (704 South 10th Street, 612 South 11th Street, and 618 South 11th Street) were purchased after his mother died.

With respect to the property located at 620 South 8th Street, Andrew testified that he used his own collateral to purchase the property, yet he did not offer any documentation, such as a loan agreement or application, to support this testimony. Because there is evidence in this record that Andrew commingled funds, he bore the burden of demonstrating that he made the loan payments for the property at 620 South 8th Street. *See Lundy*, 260 S.W.3d at 505; *Strange*, 256 S.W.3d at 782; *Cole*, 326 S.W.2d at 931. By failing to do so, and given that the jury was free to disbelieve Andrew's testimony, we reject Andrew's assertion regarding the property located at 620 South 8th Street.

With regard to the property located at 614 South 8th Street, Andrew alleged that he used a cash advance from his credit card to purchase the property. However, other than his testimony, Andrew did not offer a credit-card statement or any other documentation to substantiate this claim. Like before, because of the commingling of funds and the fact that the jury was free to disbelieve Andrew's testimony, we reject

Andrew's assertion regarding the property located at 614 South 8th Street. *See Lundy*, 260 S.W.3d at 505; *Strange,* 256 S.W.3d at 782; *Cole,* 326 S.W.2d at 931.

For the remaining eight properties that were the subject of the jury's award in this issue, Andrew offered no testimony or documentary evidence regarding the source of funding for the properties. The properties are located at 1629 Cleveland, 626 South 10th Street, 1625 Cleveland, 624 South 11th Street, 823 Clay, 704 South 10th Street, 612 South 11th Street, and 618 South 11th Street.

On the other hand, as mentioned earlier, Straub offered evidence that Andrew commingled his personal funds with Julia's. Additionally, both Straub and Brown testified that, as Julia's fiduciary, Andrew owed Julia the duty to give her the first opportunity to consider the purchase of additional rental properties, rather than purchase the properties for his own rental business. *See Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963) ("A . . . fiduciary is under obligation not to usurp . . . opportunities for personal gain, and equity will hold him accountable . . . for his profits if he does so."); *see also Lifshutz v. Lifshutz*, 199 S.W.3d 9, 19 (Tex. App.—San Antonio 2006, pet. denied) (noting that a fiduciary owes a duty to not usurp business opportunities).

Because the jury heard evidence that Andrew obtained these properties in violation of his fiduciary duties, and because there is sufficient evidence of the value of these properties, we conclude that there is some evidence to support the jury's answer to question four, part two. *See Graham Cent. Station, Inc.*, 442 S.W.3d at 263. Furthermore,

we cannot say that the jury's answer to question four, part two, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176; *see also Republic Petroleum*, 474 S.W.3d at 433. Accordingly, we overrule Andrew's fifth issue.

## E. Imposition of a Constructive Trust

In his sixth issue, Andrew challenges the sufficiency of the evidence supporting the imposition of a constructive trust on all of the "8th Street Properties." Specifically, Andrew asserts (1) that he gave valuable consideration for the "8th Street Properties"; and (2) with respect to the post-divorce properties, Straub failed to identify specific properties to which Andrew breached his fiduciary duties.

First, regarding the "8th Street Properties," the jury heard conflicting evidence about the reason Julia conveyed the properties to Andrew, including Andrew's assertion that the properties were conveyed as compensation for unpaid management fees and Straub's reliance on Julia's video recording, which stated that the conveyances were done with the intent to have Andrew fix up the properties. Regardless, as repeated throughout this opinion, the jury was free to disbelieve Andrew's testimony and disregard his handwritten notations of the "valuable consideration" given for the conveyance. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206. We therefore conclude that this argument lacks merit.

Next, Andrew complains that Straub failed to identify specific post-divorce properties to which Andrew breached his fiduciary duties. This, however, misapplies the burden of proof. As stated above, Straub presented evidence that Andrew commingled his personal funds with Julia's. As such, Andrew bore the burden of demonstrating that he purchased the post-divorce properties with his own funds, rather than Julia's. *See Lundy*, 260 S.W.3d at 505; *Strange*, 256 S.W.3d at 782; *Cole*, 326 S.W.2d at 931. Because he did not meet the burden, we conclude that this argument also lacks merit. We overrule Andrew's sixth issue.

## F.    Lost Rent

In his seventh issue, Andrew contends that there is not sufficient evidence to support the jury's finding in question 4, part three: lost rent in the past in the amount of $54,610 resulting from a breach of fiduciary duty. More specifically, Andrew alleges that the evidence does not support that he wrongfully acquired the "8th Street Properties" or the post-divorce properties and, thus, the jury's lost-rent finding is improper.

First, we note that we have already concluded that there is some evidence to support the jury's conclusion that Andrew wrongfully acquired the "8th Street Properties." Second, Andrew testified at trial that he collected $285 monthly rent for six months on the property at 916 Clay. He also noted that he has collected $600 monthly rent since 2013 on the property located at 608 South 8th Street. Additionally, Andrew has collected $250 per month in rent since June 2013 on the property located at 606 South 8th

Street.  And finally, Andrew has collected $1,000 monthly rent for twenty-four months on the property located at 620 South 8th Street.  Altogether, Andrew's testimony established that he has collected rent in the following amounts:

- 916 Clay:                  $285 per month x 6 months = $1,710
- 608 South 8th Street:      $600 per month x 58 months = $34,800
- 606 South 8th Street:      $250 per month x 58 months = $14,500
- 620 South 8th Street:      $1,000 per month x 24 months = $24,000
                             Total = $75,010

And as noted above, the jury awarded Straub $54,610 in lost rent.

Based on the foregoing, we conclude that there is some evidence to support the jury's award in question four, part three, as to lost rent.  *See Graham Cent. Station, Inc.*, 442 S.W.3d at 263; *see also MEMC Pasadena, Inc.*, 472 S.W.3d at 408.  Furthermore, viewing the evidence in a neutral light, we cannot say that the jury's answer to question four, part three, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *See Cain*, 709 S.W.2d at 176; *see also Republic Petroleum*, 474 S.W.3d at 433.  As such, we overrule Andrew's seventh issue.

## G.    Andrew's Authenticated Claims and Offsets

In his tenth issue, Andrew challenges the sufficiency of the evidence supporting the jury's answers to questions thirteen through twenty-one, which involve Andrew's authenticated claims and his request for offsets due to alleged double counting.

In the instant case, the jury refused to find in Andrew's favor on Authenticated Claims 2-6. For the reasons articulated below, we conclude that the jury properly rejected Andrew's Authenticated Claims 2-6. *See Graham Cent. Station, Inc.*, 442 S.W.3d at 263.

Claim 2 sought $8,000 for funds Andrew allegedly advanced to Julia for "personal living expenses and business expenses." In support of this claim, Andrew produced excerpts from bank statements showing the amounts transferred from one account to another.

At trial, Straub testified that he refused the claim because Andrew failed to produce a promissory note or other loan documentation. Specifically, Straub stated the following:

> I said that it was unclear if it was a loan, a gift, or co-mingling of expenses.
>
> . . .
>
> I did not have a question as to whether the transfer was actually into her account, but you [Andrew] produced, as I said, no promissory note, you know. So I couldn't tell if it was a loan, a gift, sharing of expenses, compensation or some other exchange of funds between family members.

In addition to Andrew's failure to produce a loan agreement, receipts, or a promissory note showing that Julia agreed to repay these funds or what these funds were spent on, Andrew's evidence also showed additional transfers from Julia's Genco account and another account purportedly owned by Andrew that were not included in Andrew's claim. Given the above, as well as the fact that Andrew commingled funds, we cannot conclude that the jury erred by rejecting Andrew's second claim.

Andrew's third claim sought $34,000 in unpaid management fees from January 2014 until Julia's death on May 5, 2014, though Andrew later explained in his testimony that this claim should have dated back to January 2013. In any event, it is undisputed that Andrew received a monthly management fee of $2,000. The jury concluded that Andrew received this monthly management fees through December 2013. However, Andrew did not provide any documentation showing that absence of the $2,000 deposits from January 2014 until Julia's death. Rather, Andrew only testified to the absence of these deposits, and, as mentioned earlier, the jury was free to disbelieve Andrew's testimony about non-payment of the management fees. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206. Therefore, given the above, we cannot conclude that the jury erred by rejecting Andrew's third claim.

Next, Andrew challenges the jury's refusal to find in his favor regarding his fourth claim, which was for unpaid management fees of $40,000 allegedly incurred after Julia's death. Once again, besides his own testimony, Andrew did not provide any documentation to support this claim. Therefore, because the jury was free to disbelieve Andrew's testimony about non-payment of these management fees, we cannot conclude that the jury erred by rejecting Andrew's fourth claim. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206.

Andrew's fifth claim sought $821.96 in expenses he purportedly paid in April 2014, for utilities, carpet cleaning, and a phone bill. In support of this claim, Andrew merely produced a typewritten list of these expenses. Andrew did not provide any receipts, invoices, or statements to corroborate these expenses. Like before, because the jury was free to disbelieve Andrew's testimony regarding the expenses, we cannot conclude that the jury erred by rejecting Andrew's fifth claim. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206.

Andrew's sixth claim sought $9,301 in credit-card expenses that Andrew incurred on his personal credit card to make purchases for Julia personally, as well as for the family business. In support of this claim, Andrew attached 222 pages of excepts from credit-card statements with the relevant charges highlighted. However, like before, Andrew failed to provide documentation to establish what the purchases were for and that Julia had agreed to repay these funds. Because the jury was free to disbelieve Andrew's testimony regarding the credit-card expenses, we cannot conclude that the jury erred by rejecting Andrew's sixth claim. *See City of Keller*, 168 S.W.3d at 819; *McGalliard*, 722 S.W.2d at 697; *Republic Petroleum*, 474 S.W.3d at 433; *see also Hunter*, 305 S.W.3d at 206.

Furthermore, we cannot conclude that the jury's rejection of Andrew's second through sixth claims is so contrary to the great weight and preponderance of the evidence

as to be manifestly unjust. *See Cain*, 709 S.W.2d at 176; *see also Republic Petroleum*, 474 S.W.3d at 433. Accordingly, we overrule Andrew's tenth issue.

### III.     FEE FORFEITURE & THE STATUTE OF LIMITATIONS

In his second issue, Andrew asserts that the trial court abused its discretion by awarding a fee forfeiture without adequate consideration of the relevant factors. Andrew also argues that the fee forfeiture amounted to a double recovery. In this third issue, Andrew alleged that at least part of the forfeiture award is barred by limitations.

We review a trial court's fee-forfeiture determination for an abuse of discretion. *Burrow v. Arce*, 997 S.W.2d 229, 243 (Tex. 1999); *see Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 339 (Tex. App.—Fort Worth 2003, pet. denied). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Miller*, 142 S.W.3d at 339; *see Dernick Res., Inc. v. Wilstein*, 471 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). An abuse of discretion does not occur when the trial court bases its decision on conflicting evidence, as long as some evidence reasonably supports the trial court's decision. *Miller*, 142 S.W.3d at 339 (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002)); *see Dernick Res., Inc.*, 471 S.W.3d at 482-83.

> Courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of a fiduciary duty. *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *see also Burrow*, 997 S.W.2d at 237 ("[A]s a rule a person who renders services to another in a relationship of trust may be denied compensation for his service if he breaches that

trust."). The primary purpose of fee forfeiture as an equitable remedy is not to compensate the injured principal, but to protect relationships of trust by discouraging disloyalty. *Swinnea*, 318 S.W.3d at 872-73 (quoting *Burrow*, 997 S.W.2d at 238). Forfeiture is not justified in every instance in which a fiduciary violates a legal duty because some violations are inadvertent or do not significantly harm the principal. *Burrow*, 997 S.W.2d at 241 (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. B (1996)); *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 338 (Tex. App.— Fort Worth 2003, pet. denied). The remedy of fee forfeiture is only available for "clear and serious" violations of a fiduciary duty. *Burrow*, 997 S.W.2d at 241; *Miller*, 142 S.W.3d at 338.

"Whether a fee forfeiture should be imposed must be determined by the trial court based on the equity of the circumstances." *Miller*, 142 S.W.3d at 338; *see also Burrow*, 997 S.W.2d at 245 ("As a general rule, a jury 'does not determine the expediency, necessity, or propriety of equitable relief.") (quoting *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979)). However, certain matters—such as whether or when the alleged misconduct occurred, the fiduciary's mental state and culpability, the value of the fiduciary's services, and the existence and amount of harm to the principal—may present fact issues for the jury to decide. *Burrow*, 997 S.W.2d at 246; *Miller*, 142 S.W.3d at 338. Once the factual disputes have been resolved, the trial court must determine whether the fiduciary's conduct was a clear and serious breach of duty to the principal, whether any of the fees should be forfeited, and if so, what the amount should be. *Burrow*, 997 S.W.2d at 245-46; *Miller*, 142 S.W.3d at 338.

The remedy of forfeiture must fit the circumstances presented. *Swinnea*, 318 S.W.3d at 874. The trial court should consider factors such as the gravity and timing of the breach, the level of intent or fault, whether the principal received any benefit from the fiduciary despite the breach, the centrality of the breach to the scope of the fiduciary relationship, any other threatened or actual harm to the principal, the adequacy of other remedies, and whether forfeiture "fit[s] the circumstances and work[s] to serve the ultimate goal of protecting relationships of trust." *Id.* at 875; *see Burrow*, 997 S.W.2d at 243-46; *Miller*, 142 S.W.3d at 338-39.

*Dernick Res., Inc.*, 471 S.W.3d at 482.

In the instant case, the trial court did not make written findings on the forfeiture factors listed above. Further, the record shows that Andrew did not request that the trial court make such findings. Therefore, in the absence of written findings, we imply that the trial court made all necessary findings, and we will uphold the judgment on any legal theory supported by the evidence. *In re J.C.*, 346 S.W.3d 189, 193 (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.)).

Regarding culpability, the jury found that Andrew acted with "malice, fraud, or gross negligence" and that he knowingly misapplied property or money he controlled as Julia's fiduciary. These findings are not challenged by Andrew.

With regard to the relevant factors, the evidence reflects that Andrew claimed to have paid Julia between $1,400 and $1,500 per month out of the rents he collected. This amounts to between $16,800 and $18,000 annually. However, Plaintiff's Exhibit 32 shows that Andrew deposited less than these amounts to Julia's savings account every year starting in 2003, except for 2006-2008. Specifically, this exhibit, which was entitled, "Income Tax Return Analysis," showed "Mom's Income From Business" to be as follows:

- 2003   $2,259 (3 months)
- 2004   $15,900
- 2005   $14,925
- 2006   $17,857
- 2007   $18,500
- 2008   $17,000
- 2009   $13,458

- 2010 $10,345
- 2011 $5,850
- 2012 $8,290
- 2013 $7,556
- Total $131,940

As shown above, in most years, Andrew deposited much less than $16,800 or $18,000, especially in Julia's later years. This evidence demonstrates the gravity and timing of Andrew's misconduct. Straub also presented evidence that Andrew did not lease several of the rental properties during the years he managed the properties.

Evidence was also presented that, although Julia received some funds and that Andrew did relieve her of the burden of managing the properties, Julia received much less that she would have otherwise had Andrew properly managed the properties and attended to his fiduciary duties. Indeed, the jury found that Julia suffered hundreds of thousands of dollars in damages for wrongfully-acquired funds and realty and for lost rents.

With respect to the adequacy of other remedies, we recognize that the actual-damages award compensates the estate for the harm suffered by Julia, and the exemplary-damages award punishes Andrew for his misconduct. The fee disgorgement serves the separate function of protecting fiduciary relationships. *See McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 905 (Tex. App.—Dallas 2014, pet. denied) ("Equitable disgorgement is distinct from an award of actual damages in that the disgorgement award 'serves a separate function of protecting fiduciary relationships.'"

(quoting *Saden v. Smith*, 415 S.W.3d 450, 459 (Tex. App.—Houston [1st Dist.] 2013, pet denied))); *see also Swinnea*, 318 S.W.3d at 874. Accordingly, we conclude that the fee forfeiture in this case fits the circumstances and serves the purpose of protecting fiduciary relationships.

Next, we address Andrew's contention that part of the forfeiture award is barred by limitations. The record reflects that Andrew raised the affirmative defense of limitations in his answer to Straub's original petition. However, the issue of limitations was not submitted to the jury, nor did Andrew object to this omission or request that a question on limitations be submitted. Because the statute of limitations is an affirmative defense, *see* TEX. R. CIV. P. 94, Andrew had the burden to "plead, prove, and secure findings to sustain [his] plea of limitations." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988). Because Andrew did not secure findings from the jury on his limitations defense, and because he did not request any questions on limitations or object to the omission of such questions, Andrew waived his limitations defense.[3] *See* TEX. R. CIV. P. 279; *see also Wise v. Anderson*, 163 Tex. 608, 359 S.W.2d 876, 880-81 (Tex. 1962)

---

[3] The fact that Andrew re-asserted his limitations defense in his motion for new trial and secured a denial of his motion for new trial does not serve to preserve his limitations defense. *See Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 325 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g) ("No issue on limitations was submitted to the jury, and [defendant] did not object to this omission or request that a question on limitations be submitted. He has therefore waived his limitations defense."); *Ogu v. C.I.A. Servs.*, No. 01-09-01025-CV, 2011 Tex. App. LEXIS 1979, at *16 n.4 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.) ("[T]he statute of limitations is an affirmative defense that must be pleaded and tried in the trial court or it is waived; it may not be raised for the first time after trial." (citing *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 814-15 (Tex. App.—Dallas 2008, no pet.) (holding that a limitations defense is waived when first raised in a motion for new trial))).

(holding that plaintiff waived the issue by failing to request jury issues and obtain fact findings on whether defendant's absence from the state tolled the statute of limitations); *Roberts v. Holmes*, 412 S.W.2d 947, 949 (Tex. Civ. App.—Eastland 1966, no writ) (holding that appellants waived their limitations defense by failing to request a jury question or object to the trial court's failure to submit the limitations issue).

Andrew's final argument in this issue is that the fee forfeiture constitutes a double recovery because exemplary damages were assessed. While the Texas Supreme Court, in *Swinnea*, has stated that a punitive-damages award is something to be considered with respect to the adequacy of other remedies, we emphasize that Texas courts have expressly held that fee forfeiture serves the separate function of protecting fiduciary relationships—something that has not been said about an award of exemplary damages. As such, we cannot say that the fee forfeiture constituted a double recovery. Furthermore, we cannot say that the trial court abused its discretion by awarding a fee forfeiture. *See Burrow*, 997 S.W.2d at 243; *Dernick Res., Inc.*, 471 S.W.3d at 482-83; *Miller*, 142 S.W.3d at 339. We therefore overrule Andrew's second and third issues.

## IV. DOUBLE RECOVERY

In his eighth issue, Andrew argues that the judgment should be modified to reverse the imposition of a constructive trust on the "8th Street Properties," the fee forfeiture, or actual-damage award to prevent a double recovery. We disagree.

It is axiomatic that a party is not entitled to a double recovery. *See Waite Hill Servs. v. World Class Metal Works*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam). A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *See id.* (citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991)). "Appellate courts have applied the one satisfaction rule when the defendant commits the same act as well as when the defendants commit technically differing acts which result in a single injury." *Sterling*, 822 S.W.2d at 7. The award of money damages for breach of fiduciary duty and the imposition of a constructive trust for the same breach constitutes an impermissible double recovery. *See Willis v. Donnelly*, 118 S.W.3d 10, 43-44 (Tex. App.—Houston [14th Dist.] 2003), *aff'd in part and rev'd in part on other grounds*, 199 S.W.3d 262 (Tex. 2006).

Here, the jury awarded actual damages in the amount of $750,181, which consisted of $224,000 for the management fees, $207,754 for the wrongfully-acquired funds, $263,817 for the wrongfully-acquired real estate, and $54,610 for lost rent. The trial court, in its judgment, reduced the actual damages award to $412,580.90—a reduction that consisted of $263,817 for the wrongfully-acquired real estate, and a $59,854 offset for one of Andrew's Authenticated Claims. In other words, the adjustments made by the trial court eliminated the actual-damage award for the wrongfully-acquired real estate, which was the basis for the imposition of the constructive trust. Furthermore, Andrew has not adequately explained how, based on the jury's findings, that the fee-forfeiture award and the award for wrongfully-acquired funds, when considered with the constructive trust,

constituted double recoveries. Instead, in this issue, which contains no citations to authority, Andrew appears to once again disagree with the jury's conclusion that he breached any fiduciary duty in this case. Therefore, based on the foregoing, we overrule Andrew's eighth issue.

## V. THE JURY'S ASSESSMENT OF EXEMPLARY DAMAGES

In his ninth issue, Andrew challenges the jury's award of exemplary damages. Specifically, Andrew complains that the exemplary-damages award is excessive because the awards of actual damages and equitable relief must be reversed. *See Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981) ("Exemplary damages must be reasonably proportioned to actual damages."). Because we have concluded that the record contains sufficient evidence to support the awards of actual damages and equitable relief, and because this issue is premised entirely on reversal of the awards of actual damages and equitable relief, we conclude that this issue lacks merit. As such, we overrule Andrew's ninth issue.

## VI. CONCLUSION

Having overruled all of Andrew's claims on appeal, we affirm the judgment of the trial court.

JOHN E. NEILL
Justice

Before Chief Justice Gray
        Justice Neill, and
        Justice Johnson
Affirmed
Opinion delivered and filed May 21, 2021
[CV06]

