# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00086-CV

---

### Jonathan Jones, Appellant

### v.

### Laury Carson, Appellee

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-17-004533, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Years after their 2018 divorce, Jonathan Jones and Laury Carson petitioned for relief against one another in the underlying suit affecting the parent-child relationship (SAPCR), which included Carson's petition for a modification of the conservatorship and custody provisions of their divorce decree. *See* Tex. Fam. Code Ch. 156. After a two-day bench trial, the trial court, awarded Carson her requested modification; named her as the children's sole managing conservator, with Jones as a possessory conservator; ordered that Jones's visitations be supervised under a new custody schedule; and granted other relief ordering Jones to take certain actions and to refrain from others. Jones has appealed, appearing pro se, challenging several aspects of the court's judgment in numerous appellate issues. Because none of the issues raised require reversal, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Jones and Carson are the parents of three children together—a daughter who was 10 years old at the time of trial, a daughter who was then nine years old, and a son who was then six. Jones lives in central Texas and Carson in Kaufman County. The two have been joint managing conservators for their children since their 2018 divorce. Jones has other children by other women, and Carson lives with her current husband. Their coparenting relationship appears to have broken down in early 2020, when Jones began filing pleadings of various kinds against Carson, mostly involving disputes over conservatorship and possession of their children.

Carson's request for modification, as well as Jones's numerous pleadings, went to trial in early October 2021. At several points during the trial, Jones told the court that he had just recently gone to the hospital and needed a continuance because he was not prepared for trial. Carson's current husband testified that day, and although Jones said that he was not ready for the testimony because of his health issues, he made objections during the direct examination and then cross-examined Carson's husband. The court granted Jones's request for a continuance because of his health issues.

The bench trial resumed just over two weeks later. On the second day of trial, Jones and Carson testified and offered exhibits that were admitted into evidence. The court asked the children's guardian *ad litem* to offer her thoughts: "[T]he Court is going to allow you to present any—in narrative form, your thought—anything that you think the Court would need to know, and the parties, of course, can object, but you may proceed, please, quickly." Jones made objections during the guardian *ad litem*'s presentation, and although the court at first refused to allow Jones to cross-examine the guardian *ad litem* because the court's time limits for the trial had expired, the court later "allow[ed] Mr. Jones to cross-examine [the guardian *ad litem*] for ten minutes."

2

Immediately before making this statement, the court took "judicial notice of the guardian ad litem's report dated August 5th that has been filed." Jones did not object.

After the time limit for the cross-examination expired, the court orally rendered judgment granting Carson's requested modification and awarding relief largely in line with the guardian *ad litem*'s recommendations. The court later signed its final Order Modifying the Parent-Child Relationship, with its Supervised Possession Order, Conservatorship Order, and Child Support Order attachments. Jones appeals this Order.

## DISCUSSION

Jones divides his brief's arguments into a Summary of the Argument section and an Argument section divided into subsections corresponding with numbered Issues 1 through 7. Within these portions of his brief, however, he often argues more than one discrete appellate issue.

### *Issue 3*

In his Issue 3, Jones contends that Carson did not plead and prove her standing to maintain this SAPCR modification suit. But the statutes he cites to support his argument concern standing for grandparents, other extended relatives of the children, or other nonparents. *See* Tex. Family Code §§ 153.432, .433. Those statutes aside, a *parent* has standing to maintain a SAPCR modification suit, under other statutes. *See id.* §§ 102.003(a)(1), 156.002(b). And Carson pleaded that she was the children's mother, and testimony—including from Jones himself—showed that Carson is the children's mother. We overrule this issue.

### *Issues 1 and 2*

Jones's next two discrete appellate issues concern the subject of his health issue during the first day of trial and the witness examination that same day of Carson's husband. In his

3

Issue 1 and in a portion of Issue 2, Jones contends that "[t]he trial court violated [his] right to due process and abused its discretion by requiring [him] to continue with examination after objections and pleadings made under oath by [him] and disregarding visual and material evidence to that fact." We first note that the court granted Jones's request for a continuance during the first day of trial because of his health issues. The only witness examination conducted before that point was of Carson's husband, but because of the grant of the continuance, there remained another day of trial during which Jones could have re-called the husband to testify, but he did not do so. In any event, Jones has not cited any authorities to support his Issue 1, so it is waived for inadequate briefing. *See* Tex. R. App. P. 38.1(i); *see also Caldwell v. Garfutt*, No. 03-14-00019-CV, 2016 WL 105920, at *3 (Tex. App.—Austin Jan. 7, 2016, pet. denied) (mem. op.) (holding *pro se* appellant to requirements of Rule of Appellate Procedure 38.1(i) in appeal arising out of SAPCR modification suit).

In another portion of his Issue 2, Jones contends that he was denied due process because the trial court did not strike from the record portions of Carson's husband's testimony after Jones explained his health issues to the court. Yet the record contains no trial-court motion or request by Jones to strike the husband's testimony. After the husband testified on direct examination, Jones used his opportunity to cross-examine the husband, and his cross-examination ended after telling the court that he had asked "all my questions for" the husband. Because Jones did not make a motion or request to strike in the trial court, or otherwise bring this due-process issue about the husband's testimony to the trial court's attention, he has not preserved this issue for appellate review. *See* Tex. R. App. P. 33.1(a)(1); *Cyree v. Cyree*, No. 03-21-00319-CV, 2022 WL 17835215, at *5 n.6 (Tex. App.—Austin Dec. 22, 2022, no pet.) (mem. op.) (holding due-process issue waived if not first presented to trial court).

4

In another portion of his Issue 2, Jones contends that the trial court erred by denying his motion for a continuance filed the day before the second day of trial and his oral requests for a continuance made during the second day of trial so he could subpoena the Department of Family and Protective Services. The motion states that "[n]ew evidence and witnesses in the case have presented a substantial change in the case." During trial, Jones orally represented that he needed the continuance because "CPS has come on a number of times to investigate" and he "would love to subpoena" CPS, "who cannot be here today." These representations before and during trial aside, Jones's appellant's brief argues for the first time on appeal that he needed the continuance "due to newly discovered evidence of parental abuse, coercion, and neglect that had been obtained at most twenty[-]four . . . hours prior to trial." To preserve error, however, a motion for a continuance must be in writing and accompanied by an affidavit, *see* Tex. R. Civ. P. 251; *M.F. v. State*, No. 03-15-00666-CV, 2016 WL 3678432, at *2 (Tex. App.—Austin July 7, 2016, pet. denied) (mem. op.). In addition, review of a denial of a continuance focuses on the matters that were before the trial court when it made its ruling. *See Trevino v. O'Quinn*, No. 03-18-00197-CV, 2019 WL 4125125, at *8 (Tex. App.—Austin Aug. 30, 2019, no pet.) (mem. op.) ("We review a trial court's denial of a motion for continuance for abuse of discretion."); *Miller v. Miller*, No. 03-14-00603-CV, 2015 WL 6830754, at *7 (Tex. App.—Austin Nov. 4, 2015, no pet.) (mem. op.) ("At the end of the day, we have to decide whether the trial court abused its discretion based on the record before it."); *Beard v. Commission for Law. Discipline*, 279 S.W.3d 895, 902 (Tex. App.—Dallas 2009, pet. denied) (stating in abuse-of-discretion review, "It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted" (internal quotation omitted) (quoting *Methodist Hosps. of Dall. v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.))). Neither Jones's oral

5

representations to the trial court nor his representations made for the first time on appeal can support a reversal under this issue.

Rule 252 of the Texas Rules of Civil Procedure states in pertinent part:

> If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source.

Tex. R. Civ. P. 252; *see also Scroggins v. Scroggins*, No. 09-21-00094-CV, 2022 WL 17841134, at *3 (Tex. App.—Beaumont Dec. 22, 2022, no pet.) (mem. op.); Tex. R. Civ. P. 251 (motions for continuance must state "sufficient cause"). Jones's motion did not make the required showing. We overrule this issue. *See Scroggins*, 2022 WL 17841134, at *3.

In the remaining portion of his Issue 2, Jones contends that the trial court should have granted his motion for new trial based on newly discovered evidence—apparently, the same purported evidence for which Jones asked for the continuance to subpoena the Department of Family and Protective Services. "We review the trial court's denial of a motion for new trial for an abuse of discretion." *B.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00118-CV, 2020 WL 5100641, at *14 (Tex. App.—Austin Aug. 28, 2020, pet. denied) (mem. op.). The following is relevant to Jones's appellate issue:

> A party seeking new trial due to newly discovered evidence must demonstrate in the trial court that:

6

(1) the evidence has come to its knowledge since the trial, (2) its failure to discover the evidence sooner was not due to lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted.

*Id.* (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010)). Jones's motion failed to make the first and fourth required showings. All that the motion and accompanying unsworn declaration say about the newly discovered evidence is that it concerns unspecified parental misbehavior: "Trial court erred by not granting continuance at . . . Jones's request . . . due to newly discovered evidence of parental abuse, coercion, and neglect that had been obtained 48 hours prior to trial, which evidence was brought to [his] attention by DFPS." The motion shows that Jones became aware of the evidence *before* trial, not after. And the motion makes no showing that whatever the evidence is—because the motion does not say what it is—would probably have produced a different result in the trial court. We overrule this issue.

### Issue 5

In his Issue 5, Jones contends that the trial court improperly limited the time he had to cross-examine the guardian *ad litem*. The limit the court imposed was based on the same overall time limit for trial mentioned above. *See* Tex. R. Evid. 611(a) (trial court may place reasonable limits on presentation of evidence); *E.J. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-18-00473-CV, 2018 WL 6627720, at *5 (Tex. App.—Austin Dec. 18, 2018, pet. denied) (mem. op.), (trial court may place reasonable time limits on trial presentation). We review a trial court's imposition of time limits like these for an abuse of discretion, and there is no abuse of discretion unless the court acted in an arbitrary and unreasonable manner. *E.J.*, 2018 WL 6627720, at *5. "[W]hen trial courts have set time limits with the input of parties and then held parties to those

7

time limits, reviewing courts have not found a denial of a fair trial." *Id.* The information the trial court had when it made its decision to limit Jones's cross-examination included court personnel's earlier representation that Jones had asked for one hour for trial and Carson for two. Only after the same member of the court's personnel notified the court that "[w]e have gone over time," and added that the immediately preceding cross-examination question by Jones was thus "the last question," did the trial court then shut down the cross-examination. Thus, the information before the court was that imposing the time limit when it did was a matter of holding Jones to the time limit that his earlier input had helped to set. *See id.* The court therefore did not abuse its discretion in cutting off cross-examination when it did, and we overrule this issue.

### Issue 7

In a portion of his Issue 7, Jones raises two issues about purported exclusions of evidence. We review rulings excluding evidence for an abuse of discretion. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012); *In re L.S.*, No. 04-20-00383-CV, 2021 WL 6127924, at *5 (Tex. App.—San Antonio Dec. 29, 2021, no pet.) (mem. op.). He contends that the trial court "exclud[ed] police report records" and "video and audio evidence of violence committed by" Carson's husband.

We first note that the court did, in fact, admit much of the material that Jones contends was excluded from evidence. While testifying, Jones himself read into evidence the contents of what he said was a police officer's "sworn affidavit of [an] incident" involving "what transpires when I actually go to get my children from their mother's." After reciting the affidavit's contents, Jones said that more "police records" that he wished to offer were part of his Exhibit N, and his Exhibit N was admitted into evidence. Jones played video content from Exhibit N for the

8

court.  As for the rest of the "video and audio evidence," at least some of it, according to Jones, concerned the same incident that the read-into-evidence officer's affidavit detailed and that was otherwise addressed by admitted-into-evidence Exhibit N.

Although Jones does not cite any part of the record where he contends police-report records were excluded, we will assume he is referring to the following exchange.  In it, the trial court prevented him from *publishing* certain police reports during his trial presentation:

> Mr. Jones: On visitation, Your Honor, I have all of these incidents which corroborate the police reports, Your Honor, as well.
>
> The Court: Okay.  Well, that's not coming in because we don't have time.  Go ahead.
>
> Mr. Jones: Yes, Your Honor, I understand.  In one of the—*I can just show the police reports*, Your Honor.  It's fine.
>
> The Court: No, you can't—
>
> Mr. Jones: No, I mean—
>
> The Court: —because we're out of time.
>
> Mr. Jones: Okay.  If I can—
>
> The Court: All right.

(Emphasis added.)  But preceding this exchange is context from Jones's trial presentation showing that the police reports were part of his Exhibit N, which the court had already admitted into evidence:

> Mr. Jones: Yes, Your Honor.  This incident, as you can see from these police reports in Exhibit N, which is also in the box, occurs from—this number 17 denotes the date, 2017, 2019, 2020, 2021.  . . .
>
>  . . . .
>
> The Court: Okay.  Exhibit N is admitted.  Okay.  You can play it.

9

. . . .

Mr. Jones: Here, Your Honor, in this video is when [Carson's husband] actually got out of the gate. He's walking next to my scar [sic] and he says—and I said—

The Court: Okay. What is this labeled? Exhibit what?

Mr. Jones: This is still Exhibit N. It's the same exhibit, Your Honor.

The Court: Okay. This is admitted. Go ahead.

Based on the appellate record, the police-report records about which Jones complains were not excluded from evidence—they were admitted.

By contrast, the "video and audio evidence of violence" was, based on our review of the record, apparently excluded during a later exchange. Although Jones wanted to show video evidence, the court excluded it because the overall presentation of evidence had gone over the time limit that the court had allotted. A trial court may "exercise reasonable control over the mode and order of . . . presenting evidence so as to: (1) make those procedures effective for determining the truth [and] (2) avoid wasting time." Tex. R. Evid. 611(a)(1), (2). In doing so it may impose time limits, and "[w]e review a trial court's imposition of time limits at trial, and the exclusion of evidence due to the imposition of time limits," for an abuse of discretion. *See E.J*, 2018 WL 6627720, at *5. "A trial court does not abuse its discretion unless it acts in an arbitrary and unreasonable manner." *Id.*

Comments by the trial court leading up to the exclusion of the "video and audio evidence" show that the time limit the court imposed stemmed from the parties' earlier representations about how long the trial would take. During the first day of trial, court personnel told the court that Jones had asked for one hour for trial and Carson for two. When a trial court "limits the amount of time a party has to present its case, and thereby prevents a party from

10

presenting all of its evidence, the party must object to the time limit and make an offer of proof," or bill of exception, "of the evidence it was prevented from presenting to preserve error." *See id.* Jones "did not make either an offer of proof at trial or a post-trial bill of exception setting forth the evidence excluded because of time constraints." *See id.* He therefore failed to preserve for appellate review his issue challenging the exclusion of the "video and audio evidence." *See id.* We overrule this portion of his Issue 7.[1]

In another portion of his Issue 7, Jones challenges the trial court's failure to file findings of fact and conclusions of law in response to his timely request for them under Texas Rule of Civil Procedure 296 and his timely notice of past-due findings and conclusions under Rule of Civil Procedure 297. *See* Tex. R. Civ. P. 296, 297. We review a trial court's failure to discharge its mandatory duty to file findings and conclusions in response to a proper Rule 296 request coupled with a proper Rule 297 past-due notice to determine whether the error was harmless. *See Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam); *see also Vargas v. Texas Dep't of Protective & Regul. Servs.*, 973 S.W.2d 423, 425 (Tex. App.—Austin 1998, pet. granted, judgm't vacated w.r.m.) ("If findings of fact and conclusions of law are properly requested, the trial court has a mandatory duty to file findings and conclusions." (citing

---

[1] Within this part of his Issue 7, Jones argues that the court was required to admit his evidence under Family Code Section 153.004(a), which provides,

> In determining whether to appoint a party as a sole or joint managing conservator, the court shall consider evidence of the intentional use of abusive physical force . . . *by a party* directed against the party's spouse, a parent of the child, or any person younger than 18 years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

(Emphasis added.) But Jones's evidence about violence purportedly involved violence committed by Carson's husband. Carson's husband was not a party to this suit and was not awarded anything by the court's final judgment. This statute therefore does not support Jones's argument.

11

Tex. R. Civ. P. 296, 297)).  When the failure does not prevent the appellant from properly presenting his or her case to the appellate court, however, the error is harmless.  *Graham Cent. Station*, 442 S.W.3d at 263.

Here, the record affirmatively shows that Jones has not suffered any injury from the trial court's failure to file findings and conclusions, nor does Jones show how the trial court's failure has prevented him from properly presenting his appeal.  His brief connects this issue solely to the trial court's finding of "neglect" against him in its final judgment.  He argues: "The trial court did however provide in conclusion to its final judgment stating neglect on [the] part of . . . Jones, but not citing what neglect occurred.  It is the opinion of . . . Jones that the evidence supports no finding of neglect in this case, which could limit [his] rights to visitation."  Rules 296 and 297 do not entitle Jones to an explanation of the evidence on which the trial court based its neglect finding: "A trial court, however, is not required to detail the evidence or explain how it made its findings of fact or to provide an explanation of its conclusions of law."  *Bailey v. Gasaway*, No. 03-16-00281-CV, 2017 WL 3897283, at *6 (Tex. App.—Austin Aug. 22, 2017, pet. denied) (mem. op.) (citing Tex. R. Civ. P. 297).  The lack of any further detailed findings about why the trial court made the neglect finding does not prevent Jones from properly presenting an evidence-sufficiency challenge to the neglect finding.  *See Graham Cent. Station*, 442 S.W.3d at 263.  Any error raised by this issue is thus harmless, and we overrule it.

In yet another portion of his Issue 7, Jones contends that the trial court exhibited bias against him by laughing at him "with the guardian ad litem in conclusion that [he] had fabricated evidence and was acting like he was sick during the beginning of the trial, putting on a performance."  Jones does not cite any part of the record for the biased laughing he alleges.  As best we can tell, he is referring to the following exchange during the second day of trial, beginning

at the end of the guardian *ad litem*'s direct-examination testimony, even though it contains no suggestion of laughing:

The Court: All right. We are out of time.

Mr. Jones: Am I not going to be able to cross-examine?

The Court: That's right. We've already had—y'all have exceeded your time.

Mr. Jones: Your Honor, I have contradictory evidence to the guardian ad litem entirely. Everything she said, I have evidence to the contrary, physical, real evidence.

The Court: Okay. Well, then, you should have asked for a longer trial.

Mr. Jones: I did, Your Honor. This is all sort of rushed.

The Court: When? When?

Mr. Jones: I asked for three hours last court date, Your Honor. I did. And it is in the interest of our children, Your Honor. I have evidence—

The Court: Well, you're on the docket that is short docket. Did you ask the court administrator for a long docket?

Mr. Jones: Whoever your—[other personnel], she said she would make an executive decision, Your Honor. I didn't have any choice. This was all just done.

The Court: You had more than three hours anyway.

[Court personnel]: Judge Connor, I have to clarify on that.

[Guardian *ad litem*]: Well, Your Honor, this is just more subterfuge, I'm sorry.

The Court: I know.

Mr. Jones: Oh, my gosh—

The Court: I'm sorry—

Mr. Jones: —I just want to show the evidence, Your Honor. That's all I want to do.

The Court: Hold on. Hold on. You announced—there was an announcement for three hours. You've had more than three hours.

Mr. Jones: Your Honor—

13

The Court: We did this whole thing on October 6th with this very dramatic "I'm so sick" stuff. You got more time. You could have asked the court administrator for a long docket setting. You did not. So you're done.

Mr. Jones: Your Honor—

The Court: It's over.

Mr. Jones: —I set it—

The Court: Evidence is closed. Evidence is closed.

Mr. Jones: In the best interest of my children, Your Honor—

The Court: Evidence is closed.

Soon after this exchange, however, the court let Jones cross-examine the guardian *ad litem*.

The principles to be applied when reviewing for expressions of judicial bias are deferential to trial courts:

> [O]pinions the judge forms during a trial do not necessitate recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Further, "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger . . . . A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." In short, a trial court has the inherent power to control the disposition of cases "with economy of time and effort for itself, for counsel, and for litigants."
>
>  . . . "[T]he discretion vested in the trial court over the conduct of a trial is great." A trial court has the authority to express itself in exercising this broad discretion. Further, a trial court may properly intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time.

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001) (per curiam) (internal citations omitted) (first and second quotes from *Liteky v. United States*, 510 U.S. 540, 555–56 (1994), third from *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936), and fourth from *Schroeder v. Brandon*,

14

172 S.W.2d 488, 491 (Tex. 1943)); *see, e.g.*, *Browder v. Moree*, No. 03-19-00381-CV, 2021 WL 2231253, at \*1, 4–6 (Tex. App.—Austin June 2, 2021, pet. denied) (mem. op.) (applying *Dow Chemical* in review of bias appellate issue from SAPCR bench trial), *disapproved of on other grounds on denial of mot. for reh'g of pet. for review*, 659 S.W.3d 421 (Tex. 2022) (per curiam).

Applying these principles to the part of the record excerpted above, we conclude that all the referenced expressions by the trial court fell into what *Dow Chemical* calls "immune" and says do not support a bias challenge. We overrule this issue.

In the Summary of the Argument section of his brief, Jones states what appears to be its own discrete issue. He says that Carson "never filed a motion for relief against [him] nor alleged any abuse or neglect allegations against" him. We understand this to state an issue contending that portions of the final judgment were not supported by the pleadings. "The judgment of the court shall conform to the pleadings." Tex. R. Civ. P. 301. But in the context of SAPCR modification suits such as this one involving custody issues, the pleading requirements are relaxed: "'Technical rules of practice and pleadings are of little importance in determining issues concerning the custody of children,' and this and other courts of appeals have continued to apply that rule." *Johnson v. Johnson*, No. 03-19-00196-CV, 2020 WL 4726589, at \*7 (Tex. App.—Austin Aug. 13, 2020, no pet.) (mem. op.) (internal citation omitted) (quoting *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)); *see also Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) ("'Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings.' Specifically, the trial court has discretion to place conditions on parents' visitation even if the pleadings do not

request such conditions." (internal citation omitted) (quoting and citing *MacCallum v. MacCallum*, 801 S.W.2d 579, 586 (Tex. App.—Corpus Christi–Edinburg 1990, writ denied))).

As for the abuse or neglect allegations, the trial court made the neglect finding against Jones, referenced above, under Family Code Section 153.004(b), which applies in suits to determine conservatorship. *See, e.g.*, *Chacon v. Gribble*, No. 03-18-00737-CV, 2019 WL 6336184, at *2–4 (Tex. App.—Austin Nov. 27, 2019, no pet.) (mem. op.). Carson's live pleading requested that the court determine conservatorship in this SAPCR modification suit. Under the relaxed pleading standards for these kinds of suits, the pleadings therefore supported the neglect finding in the court's final judgment.[2]

As for Jones's argument about the lack of any "motion for relief" filed against him, we are unable to discern what Jones means by this. Carson's live pleading included a prayer for relief under the heading "Request for Judgment" stating: "I ask the Court to make the orders I have asked for in this Petition and any other orders to which I am entitled. I ask for general relief." We thus overrule this issue.

---

[2] Even were this not the case, the issue of Jones's neglect was tried by consent. *See* Tex. R. Civ. P. 67. For example, the trial court took judicial notice of the guardian *ad litem*'s report, and although the report included material showing Jones's neglect, Jones did not object to the report and otherwise put on evidence of his purportedly non-neglectful care for the children. *See Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) ("[T]his issue was tried by consent of the parties. When both parties present evidence on an issue and the issue is developed during trial without objection, any defects in the pleadings are cured at trial, and the defects are waived."); *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) ("[U]npleaded claims or defenses that are tried by express or implied consent of the parties are treated as if they had been raised by the pleadings. The party who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal." (internal citations omitted)).

16

### *Issues 4 and 6*

In his issues 4 and 6, Jones contends that certain relief granted was "excessive" and "arbitrary." He first contends that the "court's judgment for supervised visitation is excessive and arbitrary." And he then contends that the "court's orders restricting [him] from tracking mother and children's location and the unlimited means by which tracking may occur are arbitrary and excessive." He does not cite any authorities to support these contentions independently of the other authorities cited in his brief, so we consider these two contentions to be evidence-sufficiency issues.

Including these two issues, all of Jones's remaining appellate issues, which are scattered throughout his appellant's brief, are evidence-sufficiency issues. We consider his brief to be challenging the legal and factual sufficiency of the evidence to support the following, whether certain findings made against him or his positions, other relief awarded to Carson, or the failure to make certain findings against Carson:

1. that the children's "circumstances had materially or substantially changed" to support a modification, *see* Tex. Fam. Code § 156.101(a)(1);

2. that a modification was in the children's best interest, *see id.* § 156.101(a);

3. that "credible evidence has been presented that [Jones] has a history or pattern of . . . child neglect . . . directed against" the children,[3] *see id.* § 153.004(b);

4. that Jones's visitations should be supervised;

5. that Jones must "complete the Parenting Class 'Any Baby Can'";

---

[3] In the relevant portions of his appellant's brief, Jones also complains of findings of abuse made against him and cites Family Code Section 153.004(a), but we see no abuse finding made against him in the trial court's final judgment.

6. that Jones is "ENJOINED and prohibited from tracking Ms. Carson and/or the children's location(s) by any means, including but not limited to tracking via cell phones and/or watches equipped for tracking"; and

7. that there were no findings that Carson caused "a significant change to child NKC's mental or physical development," engaged in "abusive and coercive behavior," and engaged in "willful neglect of the minor child's mental and emotional development".

A trial court can modify the terms of an order providing for conservatorship of a child if (1) the circumstances of the child, of a conservator, or of another party to the order have materially and substantially changed since the order was rendered and (2) the modification is in the child's best interest. *See id.* § 156.101(a)(1); *Spence v. Davis*, No. 03-22-00179-CV, 2023 WL 427063, at *1 (Tex. App.—Austin Jan. 27, 2023, no pet.) (mem. op.). The party seeking modification must establish these elements by a preponderance of the evidence. *Spence*, 2023 WL 427063, at *1.

We review the modification for a clear abuse of discretion. *Id*. at *2. A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or without reference to any guiding principle. *Id*. We consider whether the trial court had sufficient evidence on which to exercise its discretion and, if so, whether it erred in exercising that discretion. *Id*. A trial court does not abuse its discretion if some substantive and probative evidence supports its decision. *Id*.

Sufficiency of the evidence is not an independent ground of error but is a factor in deciding whether the trial court abused its discretion. *Id*. In assessing legal sufficiency, we consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports it. *Id*. To assess factual sufficiency, we consider all evidence and decide whether the evidence supporting the order is so weak or so against the overwhelming weight of the evidence that the order is clearly wrong and manifestly unjust. *Id.*

18

We defer to the factfinder's resolution of factual disputes and related credibility determinations—we may not substitute our judgment for the factfinder's in those matters. *Id.* The factfinder can resolve inconsistencies in the testimony of any witness, draw inferences from the evidence presented, and choose between conflicting inferences. *Id.* An appellate court will not overturn a factfinder's inference unless the evidence supports only the opposite inference. *Id.* We presume that the factfinder resolved evidentiary conflicts in favor of the order if a reasonable person could do so. *Id.* The factfinder can observe and assess witnesses' demeanor and credibility and can sense influences that may not be apparent from reading the record. *Id.*

In this suit involving disputed facts, the trial court included some findings of fact and conclusions of law in its final judgment, but although Jones properly requested separate findings and conclusions under Rules 296 and 297, as mentioned above, the court did not separately file any. In such circumstances, the findings included in the judgment have probative value, *see Bruce v. Bruce*, No. 03-16-00581-CV, 2017 WL 2333298, at *2 (Tex. App.—Austin May 26, 2017, no pet.) (mem. op.), and we are to "presume the trial court made all the findings necessary to support the judgment," *Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 135 (Tex. 2017) (per curiam). Also, as alluded to above, the presumption that the failure to file separate findings is harmful can be rebutted when the record "affirmatively shows that the complaining party has suffered no injury." *Id.* (internal quotation omitted) (quoting *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)). The test for this showing "is whether the circumstances of the particular case would require the complaining party to guess the reason or reasons for an adverse ruling." *Burnet Cent. Appraisal Dist. v. Millmeyer*, 287 S.W.3d 753, 760 (Tex. App.—Austin 2009, no pet.). Here, Jones's "appellate presentation confirms he understood the basis for the trial court's rulings." *See In re M.U.C.O.*, No. 04-21-00280-CV,

2022 WL 3638255, at *2 (Tex. App.—San Antonio Aug. 24, 2022, no pet.) (mem. op.). We thus conclude "that the trial court's failure to file findings of fact and conclusions of law was harmless." *Id.*

We begin with Jones's challenge to the finding of a material and substantial change. A petitioner seeking a modification must show what conditions existed at the time of entry of the prior order and what material and substantial change has since occurred. *Spence*, 2023 WL 427063, at *2. A trial court is not confined to rigid rules or definite guidelines in deciding whether circumstances have materially and substantially changed. *Id.* The decision is fact- and case-specific. *Id.* The following have supported modifications: mistreatment of the child by a parent, a parent's behavior showing that he or she has become an improper person to exercise custody, a parent's interference with the other parent's visitation, a parent's poisoning the child's mind against the other parent, and a change in home surroundings. *See Warren v. Ulatoski*, No. 03-15-00380-CV, 2016 WL 4269999, at *1 (Tex. App.—Austin Aug. 11, 2016, pet. denied) (mem. op.).

The order that Carson petitioned to modify was the parties' 2018 Final Decree of Divorce, with its provisions regarding conservatorship and custody. As evidence in this modification suit, the trial court took judicial notice of the guardian *ad litem*'s report filed with the court, and Jones did not object. The guardian *ad litem* began her work for this suit after a March 2020 order appointing the guardian *ad litem*. The report stated that her ensuing investigation revealed misbehavior by Jones toward the children and toward Carson, some of which defied the custody and possession provisions of the 2018 divorce decree.

For example, on one weekend in January 2021, the 10-year-old daughter "found a phone in Mr. Jones' apartment and called her mother to say [that she and her siblings] had been

20

left on their own for most of the day and it was late in the evening" without "food or anything to drink in the home." The daughter told Carson that the children were left "without water (they were shut in a room, told not to leave, and weren't allowed to get water for themselves, which was usually the case)." The child "begged her mom to come pick them up, which Ms. Carson did, driving five plus hours, already late at night." This incident led to a police report, which explains how the children were "left alone in Mr. Jones' apartment . . . (not the first or only time) for, what the children said to be most of the day and evening, without food or water." Jones told police that when he returned at 3:00 a.m., he had only been gone for a short time and that the children were not alone because his roommate—a person whom he had never disclosed to the guardian *ad litem*—was asleep in another room. But the roommate told police that he did not even know that the children were there. The incident overall left the children "disturbed."

The guardian *ad litem* learned from "deputies in other jurisdictions in other states" that there is a warrant for Jones's arrest arising out of Polk County, Florida, and that Jones is "still being sought by them." She also learned that the mother of another of Jones's children has accused him of "sexual assault[,] resulting in their child." The guardian *ad litem* discovered Jones to be obstructive in that he "has, on more than one occasion, failed to return the children to their mother following a weekend possession"; has "managed to sabotage and undermine this case and this [guardian *ad litem*], refusing to allow [her] to conduct a home visit, or comply with the order for visitation"; and "doesn't believe [she] ha[s] any authority to run an investigation into his life or how he handles his 'family.'" He "has lied about his address and employment, often[;] has made false allegations about the other party and [the guardian *ad litem*;] and has done everything to avoid cooperating with this [guardian *ad litem*]." The guardian *ad litem* added that Jones visits the children only sporadically but sometimes unilaterally extends his visitation periods without

21

telling Carson, in one instance causing the children to miss their end-of-year celebrations at school; he fails to fulfill his child-support requirements for the children (and for another child of his); he lacks a plan for where the children would go to school if they were to live with him; he often refuses to respond to the guardian *ad litem* and sometimes lacks a working phone; and he has refused to share his address with Carson, despite the divorce decree's requirements to the contrary. The guardian *ad litem* summarized many of Jones's interactions with her by saying that he

> seems to be unable to give a straight or honest answer when questioned, he wants instead to debate every aspect of the inquiry made by this [guardian *ad litem*], will not acknowledge the provisions of the court order, and makes circuitous, nonsensical arguments that serve only to obfuscate facts and muddy the waters.

There was also evidence tending to show that Jones had blocked Carson from being able to text-message him.

Jones's evidence in opposition to the foregoing amounted to his own testimony and a few admitted exhibits. As for his testimony, the trial court could simply have disbelieved all of it.[4] *See* Spence, 2023 WL 427063, at *2. And while most of the content of the exhibits is irrelevant on this issue, there was evidence in Jones's favor from the exhibits in the form of a Certificate of Completion of a Cooperative Parenting Program. Otherwise, the trial court could have discounted another exhibit, which included an email chain between Jones and police officers, because its relevant contents were all authored by Jones himself. *See Eichhorn v. Eichhorn*, No. 0320-00382-CV, 2022 WL 1591709, at *7–8 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.) (exhibit not probative when it was authored by witness who factfinder believed to be not credible).

---

[4] In fact, the court told him during trial, "Mr. Jones, you are not a credible witness."

Given the state of the evidence for and against Jones's position about whether there had been a material and substantial change regarding the children, we conclude under the applicable legal-sufficiency and factual-sufficiency standards that the trial court did not abuse its discretion by finding that there was a sufficient change to support a modification. *See* Tex. Fam. Code § 156.101(a)(1); *Spence*, 2023 WL 427063, at *2; *Warren*, 2016 WL 4269999, at *1. We thus overrule this evidence-sufficiency issue.

In his next evidence-sufficiency issue, Jones challenges the finding that a modification was in the children's best interest. *See* Tex. Fam. Code § 156.101(a). To determine the child's best interest, a court may use the non-exhaustive list of factors discussed in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). *Spence*, 2023 WL 427063, at *2. Those factors include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child, (7) the stability of the home, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Holley*, 544 S.W.2d at 371–72; *Spence*, 2023 WL 427063, at *2. For custody modifications, other factors include the child's need for stability and the need to prevent constant litigation in custody cases. *In re V.L.K.*, 24 S.W.3d 338, 343 (Tex. 2000); *Spence*, 2023 WL 427063, at *2. A trial court may rely on both the evidence and its experience of the parties to make a best-interest finding:

> The finder of fact is charged with making a decision based upon the testimony, but also based upon its experience and understanding of the individuals involved and their circumstances because it is in the best position to observe the demeanor and

23

personality of the witness and to "feel the forces, powers, and influences that cannot be discerned by merely reading the record."

*Howze v. Howze*, No. 03-03-00166-CV, 2006 WL 1358475, at *3 (Tex. App.—Austin May 18, 2006, no pet.) (mem. op.) (quoting *Peck*, 172 S.W.3d at 35).

On top of the evidence recounted above, there was still other evidence under the *Holley* factors tending to show that a modification was in the children's best interest. For example, regarding the children's wishes and emotional needs, the guardian *ad litem* reported that each of the children expressed a desire not to stay with Jones: "All three of the children expressed negative feelings towards Mr. Jones for a variety of reasons, mainly that he has let them down, frequently— as a result they don't trust Mr. Jones." Most notably was the youngest child, who volunteered "how unhappy he was at dad's . . . home because he fought with Ms. Anjanae[5] the previous weekend, and he was sad and scared because he (Mr. Jones) choked her (Anjanae) in his sight." The child was thus "afraid to go back to his dad's home," and when the guardian *ad litem* asked Carson if the son "had made any outcries to her," Carson said he had and relayed what the son had told Carson. All this has made the son "very cautious about the prospect of being with dad and . . . visibly shaken when talking about what he observed"—"he is, naturally, worried there will be repercussions for him 'telling' but that didn't keep him from being honest and doing what he saw as the right thing to do." In all, the son "says he's scared of his dad."

The older daughters had complaints too. The oldest said that Jones "does nothing with [the children] when they're in his home" and that "they never go anywhere and he hardly speaks to them but leaves it all up to Anjanae," whom all the children like. The middle child said

---

[5] The report identifies an "Anjanae Lafond White" as the children's "step-mother," suggesting that she is a person who lived with Jones, at least for a time.

24

that she preferred not to go to Jones's home and "echoed her sister saying there was nothing to do there but play video games." Jones's erratic disengagement from the children's lives has hurt them: "Mr. Jones has been an inconsistent and unreliable figure in their lives. He does not appear to realize the harm caused when he fails to show up for visits, hasn't acknowledged their birthdays or even called at a scheduled time."

Under other of the *Holley* factors, evidence showed that Jones would struggle to maintain a stable home. The guardian *ad litem* described the fruits of her recent investigation through contacting law enforcement:

> Reports state that Mr. Jones has been perpetrating a "lease scam" in Georgetown and was also trespassing. Additionally, earlier this month, [August 2021,] Austin Police Department made an arrest in Travis County, identified Mr. Jones and confirmed a warrant for his arrest in Williamson County for Assault with injury, issued in June.

Contrasting with its information about Jones, the guardian *ad litem*'s report is replete with positive observations about Carson, which were drawn from a visit to Carson's home and from family, friends, and acquaintances of Carson's. The observations all indicate that Carson is an attentive and loving mother; that the children are well cared for in her home; and that she addresses their needs, whether helping with homework, correcting misbehaviors, or providing emotional structure.

The evidence in Jones's favor on best interest included his testimony, which, as we said above, the trial court could simply have disbelieved, and the contents of his exhibits, which were either irrelevant on this issue or were authored by him and so could be discounted due to his lack of credibility. When viewed under the applicable standards of review, we conclude that the evidence was legally and factually sufficient such that the trial court did not abuse its discretion

by finding that a modification was in the children's best interest. We therefore overrule this evidence-sufficiency issue.

Jones's next three evidence-sufficiency issues attack (1) the finding that "credible evidence has been presented that [Jones] has a history or pattern of . . . child neglect . . . directed against" the children, *see* Tex. Fam. Code § 153.004(b); (2) the relief awarded that all his visitations should be supervised; and (3) the relief awarded that he must "complete the Parenting Class 'Any Baby Can.'" For all the same reasons, and based on all the same evidence, as we have just recounted under the best-interest issue, we conclude that under the legal- and factual-sufficiency standards the trial court did not abuse its discretion by making this neglect finding, ordering that his visitations be supervised, and ordering that he complete the parenting class. We thus overrule these evidence-sufficiency issues.

The next issue is aimed at injunctive relief awarded against Jones—that he is "ENJOINED and prohibited from tracking Ms. Carson and/or the children's location(s) by any means, including but not limited to tracking via cell phones and/or watches equipped for tracking." Entitlement to injunctive relief is subject to proof of certain elements and other restrictions in the Rules of Civil Procedure. *See, e.g.*, Tex. R. Civ. P. 682–87; *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 792 (Tex. 2020) (listing four elements for entitlement to permanent injunction); *see also Gardner v. McKenney*, No. 03-21-00130-CV, 2023 WL 1998902, at *3 n.2 (Tex. App.—Austin Feb. 15, 2023, no pet.) (mem. op.) (recognizing availability of permanent-injunction relief in modification suits); *Caldwell*, 2016 WL 105920, at *6 (same, adding that Rules of Civil Procedure apply). But nowhere does Jones cite any authorities for his brief's lone argument that the injunctive relief was "arbitrary and excessive."

26

Review of the injunction portion of the final judgment is still subject to the abuse-of-discretion standard. *See, e.g.*, *Caldwell*, 2016 WL 105920, at \*5. Here, there was evidence from which the trial court could reasonably conclude that the injunctive relief was necessary, specifically, the portion of the guardian *ad litem*'s report recommending that such a step be taken. We therefore overrule this issue.

In his final evidence-sufficiency issue, Jones contends that the court should have made certain findings against Carson—that she caused "a significant change to child N.K.C.'s mental or physical development," engaged in "abusive and coercive behavior," and engaged in "willful neglect of the minor child's mental and emotional development." As these were matters that he sought to raise by his pleadings and establish by his trial presentation, Jones bore the burden of proof to obtain these findings. In this context, under the "overarching abuse-of-discretion standard," to be entitled to reversal Jones had to show that the evidence conclusively proved the propositions on which he seeks these findings. *See Lecuona v. Lecuona*, No. 03-17-00138-CV, 2018 WL 2994587, at \*2 (Tex. App.—Austin June 15, 2018, pet. denied) (mem. op.); *accord Eichhorn*, 2022 WL 1591709, at \*10. The evidence did not conclusively prove Jones's propositions because they run counter to the numerous observations in the guardian *ad litem*'s report about Carson's appropriate parenting of the children, their emotional attachment to her, the benefits of their home life with her, and all the other friends and family who have complimented Carson about how good of a mother she is. We therefore overrule this final issue.

**CONCLUSION**

Having overruled all of Jones's issues, we affirm the trial court's judgment.

27

_____

J. Woodfin Jones, Justice

Before Justices Baker, Smith, and Jones[*]

Affirmed

Filed:   June 8, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).