**GRAHAM CENTRAL STATION, INC., Petitioner,**

v.

**Jesus PEÑA, Respondent.**

No. 13–0450.

Supreme Court of Texas.

June 20, 2014.

Joshua Kinsey Davis, Pannal Alan Sanders, Lewis Brisbois Bisgaard & Smith, LLP, Houston, TX, for Petitioner.

Fernando G. Mancias, Law Office of Fernando G. Mancias PLLC, Edinburg, TX, for Respondent.

PER CURIAM.

In this negligence case involving a nightclub patron's injuries sustained during an altercation outside the club, the trial court rendered judgment against the club's purported owner, Graham Central Station, Inc. (GCS). Because no evidence supports the finding that GCS owned the club, we reverse the court of appeals' judgment and render a take-nothing judgment in favor of GCS.

Jesus Peña was assaulted by other patrons of the Graham Central Station nightclub (the Nightclub) in Pharr, Texas. Peña sued GCS, alleging that GCS owned the Nightclub and failed to provide adequate security to protect Peña from his assailants. GCS filed a verified denial stating that it was not a proper party to the suit, did not control the relevant prem-

ises, and had no connection with the Nightclub. In written discovery responses, GCS identified Roger Gearhart as its President. GCS also disclosed that Pharr Entertainment Complex, L.L.C. d/b/a Graham Central Station in Pharr, Texas (Pharr Entertainment) owned and operated the Nightclub, and was the tenant-in-possession of the premises where the Nightclub was located. The disclosure included Pharr Entertainment's address and phone number.

Notwithstanding this disclosure, Peña never amended his petition to add Pharr Entertainment as a defendant, and the case against GCS was tried to the bench. At trial, the parties presented evidence regarding the ownership of the Nightclub and Peña's injuries. The trial court rendered judgment for Peña, awarding him $450,000 for pain and suffering as well as mental anguish, together with prejudgment interest and court costs. GCS requested findings of fact and conclusions of law, but the record does not reflect that the trial court ever filed them. GCS appealed, arguing that Peña sued the wrong party and that the trial evidence was legally and factually insufficient to support the trial court's damages award.

The court of appeals held that the evidence was sufficient to establish that GCS owned the Nightclub. 442 S.W.3d 261. The court modified the judgment by remittitur, reducing Peña's damages to $249,000, and otherwise affirmed. GCS filed a petition for review in this Court, maintaining that no evidence shows it owned the Nightclub.

■ As an initial matter, GCS complains that the trial court failed to file findings of fact and conclusions of law despite GCS's timely filing both a request and a notice of past due findings with that court. See Tex.R. Civ. P. 297. Any error in this regard was harmless, as it did not prevent GCS from properly presenting its case to the court of appeals or this Court. *Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex. 1996) (per curiam). Accordingly, we imply a finding by the trial court that GCS owned the Nightclub, which GCS has properly challenged on legal sufficiency grounds. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002); *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

■ When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). We will sustain a legal sufficiency challenge if " 'the evidence offered to prove a vital fact is no more than a scintilla.' " *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 115 (Tex.2009) (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). In conducting our review, "we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so." *Id.* "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

■ Peña's negligence claim against GCS stems from its failure to protect him from being assaulted by third parties at the Nightclub. Generally, "a person has no legal duty to protect another from the criminal acts of a third person." *Timberwalk Apartments v. Cain,* 972 S.W.2d 749, 756 (Tex.1998) (citation and internal quotation marks omitted). However, "one who

controls ... premises does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee." *Id.* (citation and internal quotation marks omitted). The exception includes an owner that "retains control over the security and safety of the premises." *Id.* (citation and internal quotation marks omitted). GCS does not dispute whether the Nightclub's owner controlled the security of the premises or owed Peña a duty under *Timberwalk,* but it does dispute whether GCS was that owner.

In holding that the evidence was sufficient to prove that GCS owned the Nightclub, the court of appeals relied largely on the following testimony by Gearhart:

Q. Mr. Gearhart, what is your position with Graham Central Station?

A. I'm a minority owner.

Q. Minority owner, okay. And the full name for that company is different than Graham Central Station; is that correct?

A. That's correct.

Q. And what is the real name for that, for Graham Central Station?

A. Pharr Entertainment Complex, L.L.C.

Q. Okay. And who besides yourself is an owner of that corporation?

A. I'm not sure who the exact owners are. Q. Okay. And are you a minority owner? A. That's correct.

Q. And what is your percentage of the ownership of this corporation?

A. Ten percent.

Q. Ten percent? Okay. And are you here as the corporate representative for the corporation?

A. I am.

Gearhart further testified that "he" provided security at the Nightclub, and that the club's security was "in-house."

The court of appeals held that because Pharr Entertainment is a limited liability company and GCS is a corporation, Gearhart must have been referring to GCS, and not Pharr Entertainment, when he stated that he was a minority owner of "that corporation." 442 S.W.3d at 264. From this testimony, in conjunction with the fact that Gearhart had identified himself as GCS's president in written discovery, the court concluded that a factfinder could reasonably infer that Gearhart was testifying about GCS and that GCS owned and provided in-house security for the Nightclub.

We disagree that a reasonable factfinder could make this inference. Although Peña's attorney posed questions to Gearhart using shorthand references to "that corporation," "this corporation," and "the corporation," the only antecedent to those references in the line of questioning is Pharr Entertainment, which Gearhart identified as "the real name ... for Graham Central Station." It stretches the imagination to infer that Gearhart was describing GCS when discussing his minority interest. Indeed, the term "Graham Central Station, Inc." was never mentioned during Gearhart's testimony, either by Peña's attorney or by Gearhart. The only reasonable inferences to be drawn from Gearhart's testimony were that Gearhart owned a minority interest in Pharr Entertainment and that Pharr Entertainment owned and provided in-house security for the Nightclub. This conclusion is buttressed by the lease agreement for the premises that housed the Nightclub, which identified El Centro Mall, Ltd. as landlord and Pharr Entertainment as tenant. Whether Gearhart was also an officer of GCS is immaterial to this conclusion, as nothing in the record supports the notion

that he was acting in that capacity in providing security for the Nightclub. Nor has Peña ever contended or demonstrated that GCS and Pharr Entertainment were engaged in a joint enterprise or were alter egos of each other.

 The court of appeals also noted the testimony of Nightclub security guard Javier Gallegos, who stated that he was paid by "Graham Central Station." Though he did not specifically reference "Graham Central Station, Inc." or "Pharr Entertainment Complex, L.L.C. d/b/a Graham Central Station," the court of appeals concluded the trial court could have reasonably inferred that Gallegos was referring to GCS. We disagree. Given the lack of specificity in this testimony, such an inference would violate the equal inference rule, under which a factfinder "may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Hancock v. Variyam*, 400 S.W.3d 59, 70–71 (Tex.2013) (citation and internal quotation marks omitted). Nothing in Gallegos's testimony makes it more likely that he was referring to GCS, as opposed to Pharr Entertainment, when identifying who paid him for his security services at the Nightclub.

Finally, the court of appeals concluded that the trial court was "free to disbelieve" the testimony of Mark Threadgill, who testified as the corporate representative of GCS that: GCS had no relationship with or ownership interest in Pharr Entertainment; GCS had no role in the management of Pharr Entertainment; Pharr Entertainment, not GCS, provided security for the Nightclub; and Pharr Entertainment, not GCS, owned the Nightclub. But GCS did not have the burden to prove that it did not own the Nightclub; rather, Peña bore the burden to prove that GCS *did*

own the Nightclub and in turn owed him a duty of care. Even ignoring Threadgill's testimony in its entirety, Peña failed to adduce any evidence to support that allegation.

In sum, we hold that the evidence supporting a finding that GCS owned the Nightclub was legally insufficient. On the contrary, the trial evidence supported the opposite conclusion—that Pharr Entertainment actually owned and operated the Nightclub. The absence of evidence that GCS owned the Nightclub and in turn owed a duty to Peña under *Timberwalk* is fatal to his claim, and we need not reach the issue of whether legally sufficient evidence supported the trial court's award of damages. Accordingly, we grant GCS's petition for review and, without hearing oral argument, reverse the court of appeals' judgment and render judgment in GCS's favor. *See* Tex.R.App. P. 59.1.