

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-22-00009-CV
_____

MICHAEL SIMMONS; WILLIAM CAYCE RIVERS; MARS COLONY, LLC; AND
MERIDIAN HIVE, LLC D/B/A MERIDIAN HIVE MEADERY AND D/B/A MERIDIAN
CELLARS WINERY, APPELLANTS

V.

EVAN WHITEHEAD, APPELLEE

On Appeal from the 459th District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-19-001880, Honorable Maya Guerra Gamble, Presiding

July 20, 2023

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Appellants, Michael Simmons, William Cayce Rivers, Mars Colony, LLC, and Meridian Hive, LLC, appeal a judgment that awards $666,750 to Evan Whitehead, for his claims of breach of contract, fraudulent transfer, conversion, breach of fiduciary duty, and

[1] Pursuant to the Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

tortious interference with contract. Appellants challenge the legal and factual sufficiency of the evidence supporting Whitehead's claims, contend that two of Whitehead's claims are time-barred, and challenge the award of attorney's fees in favor of Whitehead. We reverse the judgment of the trial court and remand for further proceedings.

## BACKGROUND

Simmons, Whitehead, and Eric Lowe met at a home-brewing club and became friends. Around 2010, Simmons brought up the idea of starting a "meadery"[2] because the Austin craft brewery market was already saturated. In January 2012, they formed Meridian Hive, LLC, for the purpose of operating the meadery. The friends intended to be equal partners in the business: Lowe would handle the financial aspects, Simmons would manage the product, and Whitehead would be in charge of sales and distribution. When Meridian Hive was formed, each of the founding partners agreed to be bound by a company agreement. Under this agreement, each of the founders contributed $10,000 to seed Meridian Hive, and each received one-third ownership of the company.

By 2015, both the financial and relational conditions of Meridian Hive had deteriorated. Lowe was personally financing much of the company's operations out of his own pocket. Simmons and Lowe believed that Whitehead, who was by this point employed full-time by the meadery, was not sufficiently dedicated to the business for it to succeed. In October of 2015, Lowe fired Whitehead's girlfriend, who was also working full-time for the meadery. This firing escalated tensions to the point that Simmons and

---

[2] A "meadery" is like a brewery that makes mead. Mead is an alcoholic beverage produced from fermented honey, water, malt, and yeast.

Lowe began discussing terms under which they could buy Whitehead out of his ownership interest in Meridian Hive. Soon thereafter, Whitehead saw emails of Simmons and Lowe discussing their strategy to buy Whitehead out of the business. Upon discovering that Whitehead had seen these emails, Simmons and Lowe terminated Whitehead's employment and locked him out of all aspects of the business. However, Whitehead retained his ownership interest in Meridian Hive.

Simmons and Lowe continued to make offers to Whitehead to buy him out of the business. However, Whitehead did not accept any of these offers. Meridian Hive's members voted to remove Whitehead as a manager in December of 2015.

At various points through 2015, Meridian Hive sold shares to a small group of individuals, including the co-owners, at $10,000 per one percent ownership interest. However, no valuation of Meridian Hive was performed during this time. By October of 2015, Meridian Hive was insolvent. It was kept afloat by loans from Lowe.

In August of 2016, Meridian Hive merged with Mars Colony, a new entity formed to allow Meridian Hive to restructure. At the time of the merger, Meridian Hive had a book value of a negative $194,222, and a net operating deficit of $83,972.88. The merger resulted in the cancellation of all founders' shares in Meridian Hive, including Whitehead's 26.67 percent ownership interest.[3] In fact, Lowe stated in an email that "the whole point of the merger was to invalidate the [Meridian Hive] company agreement . . . ." Rivers was interested in investing in the meadery but refused to do so if Whitehead remained part of

---

[3] Whitehead's ownership interest had been reduced by the sale of ownership interests mentioned above.

the company. Both Simmons and Lowe received shares in Mars Colony because of the merger, but Whitehead did not.

In April of 2019, Whitehead filed suit claiming that he was wrongfully removed as a manager of Meridian Hive and that his ownership shares were improperly taken. Whitehead asserts claims of breach of contract and breach of fiduciary duty against Simmons and Lowe, fraudulent transfer against Meridian Hive, tortious interference with contract against Rivers, and conversion against all defendants. Following a bench trial, the trial court entered a final judgment in favor of Whitehead on each of his claims and awarded him $666,750 in damages. In the judgment, Whitehead made an election of remedies and the trial court awarded him $210,171.85 in attorney's fees. Appellants timely filed a motion for new trial, which was denied. Upon Appellants' request, the trial court entered findings of fact and conclusions of law. Appellants then timely filed the instant appeal.

By their appeal, Appellants present three issues. Appellants contend that the evidence is legally and factually insufficient to support the trial court's judgment, Whitehead's conversion and tortious interference claims are barred by limitations, and the award of attorney's fees is erroneous.

### ISSUE ONE: SUFFICIENCY OF THE EVIDENCE

By their first issue, Appellants contend that the evidence is insufficient to support the amount of damages the trial court awarded to Whitehead.

When a party attacks the legal sufficiency of an adverse finding on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter

4

of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). However, a legal sufficiency challenge to the evidence supporting an adverse finding for which the appellant did not have the burden of proof requires the appellant to show that no evidence supports the adverse finding. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). When reviewing the record, we view the evidence in the light most favorable to the finding, considering only the evidence and inferences that support the finding and disregarding all evidence and inferences to the contrary. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). If more than a scintilla of evidence exists to support the finding of fact, the legal sufficiency challenge will not prevail. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263. The court must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Ultimately, we must determine whether the evidence at trial was such that it would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

In reviewing a factual sufficiency challenge, we examine all the evidence and set aside the finding only if the evidence is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Zieben v. Platt*, 786 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1990, no writ); *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In conducting a factual sufficiency review, a reviewing court must consider and weigh all the record evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the verdict only when it is so contrary to the great weight of the evidence as to be clearly

wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder, even if we would reach a different conclusion based on the evidence. *Id.*

Because the valuation of Meridian Hive is an issue on which Appellants did not have the burden of proof at trial, to prove legal insufficiency, Appellants have to prove that there is no evidence to support the trial court's award of damages. *Graham Cent. Station, Inc.*, 442 S.W.3d at 263. During trial, a document was admitted that had been prepared by Appellants showing Meridian Hive's ownership from its formation in 2012 until its merger into Mars Colony on August 26, 2016. Based on this document, Whitehead noted that, at the time of the merger, D. Eric Rivers invested $25,000 into the business in exchange for a one percent ownership interest. Thus, he contends that this transaction establishes the value of Meridian Hive at the time of the merger as $2,500,000. Considering only the evidence and inferences that support the trial court's judgment, *see Catalina*, 881 S.W.2d at 297, this constitutes some evidence that supports the trial court's award of $666,675 based on Whitehead's 26.67 percent ownership interest in Meridian Hive.

However, to prove factual insufficiency, Appellants must show that, after all the evidence is reviewed, the evidence supporting the trial court's finding is so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176; *Zieben*, 786 S.W.2d at 799. Whitehead was able to testify as to the value of Meridian Hive under the property owner rule, which provides that an owner can provide opinion testimony about the value of his own property. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012). In so testifying, the property owner "must provide the factual basis on which his opinion rests."

6

*Id.* at 159. While this burden is "not onerous," the property owner's opinion cannot be based on speculation or *ipse dixit*. *Id.* In the present case, Whitehead testified that his valuation of Meridian Hive was based solely on the transaction reflected on the Meridian Hive ownership document, which seems to indicate that D. Eric Rivers bought a one percent ownership of the business for $25,000 at the time of the merger. However, the record also reflects that Whitehead's job duties did not relate to the financial aspects of the business and, by the time of the merger, he had no knowledge of the financial transactions involving Meridian Hive. *See Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 854–55 (Tex. 2011) (owner of business can testify to business's value under property owner rule only if he is "an officer in a management position with duties that at least in some part relate to the property at issue, or an employee of the entity in a substantially equivalent position"). Lowe, who was in such a position, testified that he believes the ownership document to be in error since he was not aware of any such transaction and that such a transaction "seems nonsensical to me, especially compared to the other numbers that are on here." As such, the factual basis upon which Whitehead reached his opinion regarding the value of Meridian Hive is speculative.

Further, the great weight and preponderance of the evidence in the case establishes that Meridian Hive's proper value, at the time of the merger, was far less than $2,500,000. According to the ownership document, throughout the majority of Meridian Hive's existence, ownership shares have been sold for $10,000. As such, even using the method of valuation utilized by Whitehead, the great weight of the evidence would support a finding that Meridian Hive had a $1,000,000 value. However, there was also evidence

7

that would establish that use of the price per share method of valuing Meridian Hive was inappropriate. Lowe testified that, at the time of the merger, Meridian Hive had a negative book value and net operating income. No evidence disputes Lowe's testimony that Meridian Hive had a $194,122 negative book value or $83,972.88 net operating deficit at the time of the merger. Nothing in Whitehead's valuation of Meridian Hive addresses this undisputed evidence.

For the foregoing reasons, we conclude that evidence supporting the trial court's award of damages to Whitehead is legally sufficient. However, we also conclude that the evidence supporting the trial court's damages award is factually insufficient. As such, we overrule Appellants' legal sufficiency challenge and sustain their factual sufficiency challenge.

Other than an issue related to the applicable statute of limitations, Appellants do not contest liability on appeal. Because we reverse the trial court's judgment solely on the issue of damages, we must remand both liability and damages issues since Appellants contested liability in the trial court. *Estrada v. Dillon*, 44 S.W.3d 558, 559 (Tex. 2001) (per curiam) (citing TEX. R. APP. P. 44.1(b)).

## ISSUES TWO AND THREE

By their second issue, Appellants contend that the trial court erred by failing to dismiss Whitehead's claims for conversion and tortious interference with contract as time-barred. Whitehead contends that his election of remedies resolved any issue relating to limitations on his conversion and tortious interference claims. Because we must remand this case to the trial court, we conclude that addressing the timeliness of Whitehead's

8

claims at this time would be advisory. *Duncan v. O'Shea*, No. 07-19-00085-CV, 2020 Tex. App. LEXIS 6564, at *15 (Tex. App.—Amarillo Aug. 17, 2020, no pet.) (mem. op.) ("An advisory opinion determines an abstract question of law without binding the parties . . ." and, under article II, section one of the Texas Constitution, "courts of this state do not have jurisdiction to issue advisory opinions").

By their third issue, Appellants challenge the trial court's award of Whitehead's attorney's fees. Clearly, because we must remand this case to the trial court for further proceedings, including determining whether Appellants are liable, the propriety of an award of attorney's fees must be reserved for consideration by the trial court on remand. *See* TEX. R. APP. P. 44.1(b); *Estrada*, 44 S.W.3d at 559.

## CONCLUSION

Having determined that the evidence is not factually sufficient to support the trial court's award of damages in favor of Whitehead, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

Judy C. Parker
Justice

9