

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-23-00039-CV**

**WILLIAM EDMONDS AND PAMELA EDMONDS, INDIVIDUALLY**
**AND AS NEXT FRIEND ON BEHALF OF A.B., C.B., AND M.B.,**

                                                                    **Appellants**

 **v.**

**MATTHEW BROWN,**

                                                                    **Appellee**

_____

**From the 272nd District Court**
**Brazos County, Texas**
**Trial Court No. 21-000517-CV-272**

_____

**MEMORANDUM  OPINION**

_____

        William and Pamela Edmonds, Individually and as next friend of A.B., C.B., and

M.B. appeal from a judgment that granted a no-evidence motion for summary judgment

as to their claims for the wrongful death of their daughter.  The Edmondses argue that

the trial court erred by granting the motion for summary judgment because they

presented more than a scintilla of evidence to support their intentional tort claims, or

alternatively that the trial court abused its discretion by denying their motion for continuance to complete specified discovery, and that the trial court erred in its determination that the Edmondses could not be awarded exemplary damages on behalf of A.B., C.B., and M.B. for the intentional tort committed against their daughter, who was the mother of A.B., C.B., and M.B. Because we find that the no-evidence motion for summary judgment was improperly granted in part, we reverse the judgment of the trial court in part and remand this proceeding to the trial court for further proceedings.

Katherine Brown died from a single gunshot wound to the head while she was lying face down in her bed. Her husband, Matthew Brown, called 9-1-1 to report the shooting. After an investigation by law enforcement, Katherine's cause of death was ruled to be by suicide.

The Edmondses did not believe that their daughter committed suicide, believing instead that she had been shot by her husband. Based on their investigation and belief, the Edmondses filed a wrongful death lawsuit on their behalf and as next friend of Katherine's three minor children based on negligence, assault and battery, and gross negligence. The Edmondses also included a claim for exemplary damages.

Matthew filed a no-evidence motion for summary judgment alleging that there was no evidence of a "wrongful act, neglect, carelessness, or default" by Matthew that caused Katherine's death, and that the Edmondses are not entitled to exemplary damages. The Edmondses filed a response and included affidavits by William and

Pamela, the offense report of the investigation into Katherine's death, the pleadings from a lawsuit filed by Matthew individually to stop a foreclosure of the marital residence shortly before Katherine's death, and an affidavit by the Edmondses' attorney asking for additional time to complete discovery in order to obtain and present additional evidence to support their claims. Matthew objected to parts of the summary judgment evidence. After a hearing, the trial court sustained all of Matthew's objections to the Edmondses' summary judgment evidence and granted Matthew's motion without specifying the basis for its ruling.

**APPEAL OF NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS**

On appeal, the Edmondses concede they have no evidence to support their negligence claim. The gross negligence claim, to the extent it is a separate cause of action, is factually indistinguishable from the negligence claim. Accordingly, the trial court's judgment as to the negligence and gross negligence claims are affirmed.

**STANDARD OF REVIEW**

To defeat a no-evidence motion for summary judgment, the responding party must present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). When reviewing a trial court's grant of such a motion, we consider the evidence presented in the light most favorable to the party against whom judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary

evidence unless reasonable jurors could not. *Id*. We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We review a no-evidence summary judgment de novo. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156-57 (Tex. 2004). A no-evidence summary judgment is improperly granted if the respondent presents more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

## WRONGFUL DEATH

In causes of action filed under the Wrongful Death Statute, a plaintiff must prove a wrongful act. TEX. PRAC. & REM. CODE § 71.002(b). In this proceeding, the wrongful act alleged is an assault and battery resulting in the death of Katherine, specifically that Matthew shot her resulting in her death. The no-evidence motion for summary judgment specifically alleges that there is no evidence that Brown intentionally, knowingly, or recklessly caused bodily injury to Katherine. On appeal, Brown argues that "properly stated, the issue is whether Appellant's summary judgment evidence raised a genuine dispute of material fact that Matt killed Katie."

The Edmondses complain that the trial court erred by granting the motion for summary judgment because they presented adequate evidence in opposition to the motion even without considering the evidence that was excluded due to the objections by Matthew. As explained above, on appeal the Edmondses did not challenge the claims of negligence or gross negligence but limited their arguments to the evidence that they contend constitutes more than a scintilla of evidence to support a finding that Matthew intentionally shot Katherine and killed her.

Matthew argues that the evidence presented by the Edmondses, summarized below, is merely speculative and that there is no direct evidence that he fired the gun that caused Katherine's death. He also argues that it is not reasonable to infer that he assaulted Katherine. Moreover he contends that because Katherine's death was ruled to be a suicide and Matthew was not charged with any criminal offense related to Katherine's death, the Edmondses must negate this alternative theory of her death.

"An inference is not reasonable if it is susceptible to multiple, equally probable inferences, requiring the factfinder to guess in order to reach a conclusion." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 265 (Tex. 2014). In other words, a factfinder "may not reasonably infer an ultimate fact from 'meager circumstantial evidence which could give rise to any number of inferences, none more probable than another.'" *Hancock v. Variyam*, 400 S.W.3d 59, 70-71 (Tex. 2013).

The Edmondses argue that the summary judgment evidence regarding all the facts and circumstances surrounding her death, when viewed in the light most favorable to them as summarized below, were sufficient to defeat the motion for summary judgment, including, if necessary to negate the alternative theory of her death, namely, suicide.

The facts and circumstances, when viewed under the above-described standard, included that Katherine, who had no history of depression or mental illness, was the mother of three young children. The day before her death, Katherine found a three-day eviction notice on their residence's door. Matthew had been solely responsible for making the mortgage payments on the marital residence and had not made the payments on time and had told conflicting stories about whether the payments were made. Matthew had hired an attorney to file a lawsuit in his sole name to attempt to stop the foreclosure two months prior to Katherine's death. When Katherine saw the foreclosure notice, she contacted her parents who advised Katherine and Matthew to go to the district attorney the next morning to show proof of the mortgage payments. According to the Edmondses, Katherine had $9,000 in her personal account at the bank which would have covered the amount of the delinquent payments.

During the immediate investigation and afterward, Matthew gave conflicting stories as to what transpired immediately prior to the shooting to law enforcement, which were reflected in the offense report contained in their summary judgment response. He told one officer he was on the couch feeding their infant child when Katherine came out

and went back into the room to take a shower immediately prior to hearing the shot. Matthew told another officer that he was in the baby's room when he heard the shot. He told another officer that he and Katherine had both gotten up and discussed their plans for the day and that Katherine informed him that she was going to take a shower when he took the baby to feed her in the living room.[1]

The firearm was not in or near the bed where Katherine was found. Matthew stated that after he came into the bedroom and discovered Katherine, he picked the gun up off the bed and took it into the bathroom. He set the gun, a .357 Magnum, on the counter and washed his hands before calling 9-1-1.

When law enforcement arrived, they found Katherine on her bed lying on her stomach with her head facing to the left on a pillow with the covers pulled up her back. Katherine's left arm was bent up toward her head. Her cell phone was next to her forehead and her right arm was up by the phone. Both hands were in a fist-like shape with her fingers curled into her palms. The officers observed a bullet wound that had entered in Katherine's left temple and exited out the right side into the pillow. She was dressed only in a t-shirt and underwear.

Katherine was right-handed and had only been observed using her right hand to fire the weapon. The gun had been purchased for self-defense reasons. In order for

_____

[1] Matthew contends that this statement was clarified later in the offense report and that he did not make conflicting statements.

Katherine to have fired the gunshot that killed her, she would have had to fire the gun with her left hand.

**ANALYSIS**

We find that the evidence, when viewed in a light most favorable to the non-movants, was sufficient for reasonable minds to differ in their conclusion as to how Katherine's injury was inflicted, that Matthew intentionally, knowingly, or recklessly caused her death. Therefore, using the appropriate standard of review, we find that the trial court erred by granting the no-evidence motion for summary judgment as to the claim for assault and battery. We sustain issue one as to the assault and battery claim.

Because we have found that the trial court erred, we do not reach issue two relating to the motion for continuance to complete discovery because the issue is unnecessary to the disposition of this appeal. TEX. R. APP. P. 47.1.

**EXEMPLARY DAMAGES**

In their third issue, the Edmondses complain that the trial court erred by granting the no-evidence motion for summary judgment as to the children's claims for exemplary damages. The Edmondses had included claims for exemplary damages on their own behalf as well as on behalf of Katherine's children in their petition. The motion for no-evidence summary judgment was only as to William and Pamela Edmonds individually and did not address exemplary damages on behalf of the children. The Edmondses concede that they are not entitled to exemplary damages as parents of Katherine. *See* TEX.

CONST. art. XVI, § 26. Accordingly, the trial court's judgment as to exemplary damages for the Edmondses individually is affirmed. However, the motion for no-evidence summary judgment did not challenge the propriety of exemplary damages for the children, who would potentially be entitled to exemplary damages. Also, because the judgment is being reversed as to the assault and battery cause of action, we also reverse the part of the trial court's judgment as to exemplary damages on behalf of the children. We sustain issue three in part and overrule it in part.

## CONCLUSION

Having found that the trial court erred by granting the no-evidence motion for summary judgment as to the assault and battery claim and exemplary damages on behalf of Katherine's children, we reverse the judgment of the trial court as to those issues only, affirm the trial court's judgment as to the other issues, and remand to the trial court for further proceedings.[2]

TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Johnson, and
  Justice Smith
Reversed in part, affirmed in part, and remanded
Opinion delivered and filed August 23, 2023
[CV06]

---

[2] On appeal, after briefing on the merits was complete, the appellants filed a motion alleging that the trial court was disqualified. Because on the controverted claims we are remanding this proceeding to the trial court, the merits of the motion are best considered in the first instance by the trial court. Accordingly, the appellants' motion to set aside the trial court's judgment is denied without prejudice to filing in the trial court for the trial court's initial determination pursuant to the rules of civil procedure.