**Affirmed and Opinion Filed August 23, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00001-CV**

**JAMIE CRUSE VRINIOS, Appellant**
**V.**
**MARY KAY, INC., Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-05560**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

In this case involving breach of contract, appellant complains the evidence is legally and factually insufficient to support the jury's answers to questions concerning waiver and materiality of breach. We affirm the trial court's judgment.

## Background

Appellant Jamie Cruse Vrinios began her relationship with appellee Mary Kay, Inc. as an independent beauty consultant. She eventually became a national sales director (NSD) in appellee's organization and signed an independent national sales director agreement (the NSD agreement). The NSD agreement imposed certain

"responsibilities" on appellant for a period of two years after its termination. The NSD agreement was amended September 1, 2012.[1] The amendment required appellant, upon termination of her NSD agreement, to immediately delete or destroy all personal information in her possession that she had received from appellee regarding appellee's beauty consultants and sales directors.

Additionally, appellant signed a family security program agreement (the FSP agreement) that became effective December 1, 2002. The FSP agreement provided that appellee would pay appellant monthly payments upon appellant's retirement. It imposed continuing obligations on appellant "for so long as [appellant] is entitled to receive benefits under the Plan."

In September 2017, appellee informed appellant that she had violated her agreements and that it intended to terminate her NSD agreement on or before December 31, 2017. Appellee notified appellant,

> It is important that you immediately cease and desist from engaging in any and all activities that would constitute a breach of your agreements with the Company. These activities include, but are not limited to, the following:
> - misusing Mary Kay independent sales force members' personal information in violation of data privacy obligations;
> - promoting your Magnificent Warrior and Crazy Like Foxes books (or any other materials not licensed through the Creative Works Program) to the Mary Kay independent sales force;
> - promoting your daughter's Kinbe business to the Mary Kay independent sales force;

---

[1] We collectively refer to the NSD agreement and its September 1, 2012 amendment as "the NSD agreement."

- promoting Sarasota IV Lounge or any other treatment providers to the independent sales force;

- promoting the Jesus Alliance to the Mary Kay independent sales force and/or soliciting funds from the independent sales force for the Jesus Alliance;

- soliciting funds from the Mary Kay independent sales force for your personal expenses;

- inviting third parties to attend events with Mary Kay independent sales force in attendance and to solicit or promote third party products or services to the independent sales force at these events;

- misusing personal information of Mary Kay independent sales force members to invite them to non-Mary Kay related events;

- charging Mary Kay independent sales force members an excessive fee to participate in a Mary Kay educational or motivational event organized or led by you;

- misrepresenting the Mary Kay opportunity;

- pressuring Independent Beauty Consultants to purchase large amounts of inventory;

- using intimidation tactics to harass or intimidate members of the Mary Kay independent sales force;

- use of Mary Kay's trademarks/trade name in the promotion of another business, organization, or in any manner not expressly permitted by the Company;

- disparaging Mary Kay Inc., Mary Kay Inc. employees and/or members of the Mary Kay independent sales force;

- engaging in business activities that are likely to damage Mary Kay's reputation and goodwill.

Appellant requested to be allowed to step down as NSD effective January 1, 2018, and to become eligible to receive FSP payments thereafter. Appellee agreed—if appellant complied with conditions memorialized in an amended NSD agreement. The amended NSD agreement reaffirmed "continuing obligations" from the NSD

agreement and the FSP agreement. Section 5 of the amended NSD agreement provided in part,

> NSD [appellant] acknowledges and agrees that NSD's ability to become eligible to receive payments under the Family Security Program is dependent and contingent upon NSD's compliance with her obligations under the terms of this Amendment as well as the continuing obligations set forth in the NSD Agreement and Family Security Program Agreement as described herein. A breach of these material provisions will result in NSD forfeiting any right to payments under the Family Security Program[.]

On December 31, 2017, appellant stepped down from her position as an NSD in accordance with the amended NSD agreement. Appellee made initial FSP payments to appellant. On April 16, 2018, appellant sent an email to 6,642 persons, most of whom were affiliated with appellee.[2] On April 30, 2018, appellee delivered

---

[2] The email in part stated,

> Our third Health & Wellness podcast will be April 23rd at 12 PM EST, You won't [sic] want to miss this continuing series on increasing your health awareness. Our second Health & Wellness podcast discussed chronic Illnesses like: fibromyalgla, auto-immune disorders, multiple sclerosis, arthritis, and so much more. John Monhollon, M.D. of the Florida Integrated Medical Center in Sarasota shared with us how living a healthier lifestyle and making smart choices can directly impact these diseases. This podcast has been posted to Jamie's website www.jamievrinios.com. We hope you enjoyed it!

> As we look forward to our next Health & Wellness podcast discussing Living an Optimal Lifestyle, we invite you to re-listen to our first two life saving podcast [sic] and share it with your friends and family!

> Also, if you have specific needs and are interested in a one on one phone consultation with Dr. Monhollon, please email Jamie at JamieCVrinlos@aol.com. We will get you on his schedule promptly. Referrals from our podcast participants and seminar attendees will receive a discount and a series of B12 shots. When making your appointment through Jamie; [sic] provide the code 7777 and let them know you are a participant in the Health & Wellness podcast with Jamie Vrinios and Dr. Monhollon.

> \* \* \*

–4–

a letter to appellant. The letter stated appellant had breached her NSD agreement, FSP agreement, and amended NSD agreement by sending the April 16, 2018 mass email to appellee's sales force. It referred to the amended NSD agreement's forfeiture clause. The letter stated appellant's participation in the FSP was "hereby terminated" and that appellee would no longer make FSP payments to appellant.

Subsequently, appellee filed this lawsuit. Appellee alleged appellant's sending the April 16, 2018 email violated her agreements (a) not to promote, distribute, or sell to other members of [appellee's] sales organization, (b) not to engage in recruiting [appellee's] beauty consultants, sales directors, or national sales directors, and (c) not to use any names, mailing lists, or other information that she obtained during her association with [appellee]. Appellee sought damages and injunctive relief. Appellant answered and filed a counterclaim. She asserted appellee breached the FSP agreement by failing to make FSP payments to her. She sought monetary and injunctive relief. Appellee in part answered that its nonperformance of the FSP agreement was excused due to appellant's waiver and prior material breach.

A jury heard the case. In its answer to jury question 1, the jury found appellant failed to comply with the NSD agreement by failing to delete or destroy all personal

Coming soon! We will be posting on Jamie's site a link to purchase the supplements mentioned by Dr. Monhollon in this week's podcast. Be sure to keep checking the JCV Must Have section of the website for details.

information that she received directly or indirectly from appellee regarding appellee's independent beauty consultants, independent sales directors, and national sales directors in her possession. In its answer to jury question 2, the jury found appellant failed to comply with the FSP agreement by sending the April 16, 2018 mass email to appellee's sales force. Moreover, the jury found in its answer to jury question 3 that appellee failed to comply with the FSP agreement by failing to pay appellant thereunder. However, in its answer to jury question 4, the jury found appellee's failure to comply with the FSP agreement was excused due to appellant's waiver. In jury question 5, the jury found appellee's failure to comply with the FSP agreement was excused by appellant's previous failure to comply with a material obligation of the FSP agreement. In answer to jury question 6, the jury found appellee was not entitled to damages.

The trial court's judgment provided that both parties take nothing. Appellant filed a notice of appeal. This appeal followed.

## **Appellant's Issues on Appeal**

In her first issue on appeal, appellant argues the evidence is legally insufficient or, in the alternative, factually insufficient to support the jury finding that she waived appellee's breach of the FSP agreement. In her second issue, appellant argues, the evidence is legally or, in the alternative, factually insufficient to support the jury finding that a prior material breach on her part excused appellee's breach of the FSP agreement.

## Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). We will sustain a legal sufficiency challenge if the evidence offered to prove a vital fact is no more than a scintilla. *See id.* In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The "final test for legal sufficiency" is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* Proper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors. *See id.* at 817–18.

In reviewing the factual sufficiency of the evidence to support a jury finding for which the party did not have the burden of proof, we consider and weigh all of the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Ins. All. v. Lake Texoma Highport, LLC*, 452 S.W.3d 57, 73 (Tex. App.—Dallas 2014, pet. denied) (citing *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986)). We defer to the

jury's implicit determinations of credibility and weight to be given to the evidence. *See Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 408 (Tex. App.—Dallas 2014, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003)).

## Waiver

In appellant's first issue on appeal, she argues, "[A]ppellee was not excused from complying with its promises under the FSP under a waiver theory." Appellee responds that appellant waived any right to FSP payments by acknowledging and agreeing in the amended NSD agreement that breach of the NSD agreement or the FSP agreement would result in appellant's forfeiture of FSP payments and by subsequently not complying with the agreements. Appellee argues that appellant's sending the April 16, 2018 mass email to its sales force was conduct plainly contrary to the NSD agreement and the FSP agreement.

### The Forfeiture Provision Did Not Terminate December 31, 2017

Appellant initially contends the amended NSD agreement and its forfeiture clause terminated on December 31, 2017, and was not in effect when her April 16, 2018 email was sent. Appellant maintains the amended NSD agreement—with its forfeiture provision—is a "bridge" agreement intended to allow her to continue working until she would retire on December 31, 2017 and to subsequently receive FSP payments.

In response, appellee argues the amended NSD agreement, with its forfeiture clause, contains no termination date and was in effect when appellant sent the April

16, 2018 email. It argues that even if the amended NSD agreement was a "bridge" away from some past obligations, it also contained continuing obligations that did not terminate on December 17, 2017.

Appellant mainly argues section 5 of the amended NSD agreement terminated on December 31, 2017, because section 5 contains a sentence that "states the requirements necessary for [appellant] to '*become eligible*' for FSP benefits, not to '*become and remain*' eligible.'" (Emphasis in original.) Appellant argues, "When parties mean 'become *and remain* eligible' for benefits, they say so in their agreement." (Emphasis in original.) She relies on two opinions in support of that argument. *See Medvigy v. Metro. Life Ins. Co.*, No. H-08-2623, 2010 WL 518774 (S.D. Tex. Feb. 2, 2010); *Whitehead v. Lee Enters.*, No. 4:12CV01302 ERW, 2013 WL 3542686 (E.D. Mo. July 11, 2013). In *Medvigy*, the district court held that a divorced spouse seeking insurance benefits did not "remain eligible" to receive benefits under the terms of insurance. *See Medvigy*, 2010 WL 518774, at *4 (the certificate of insurance stated, "You and Your Dependents will only be insured for the benefits: for which You and Your Dependents become and remain eligible."). In *Whitehead*, the district court held that at the time of his death, plaintiff's husband was not covered under a group life insurance plan and that no benefits were payable to the plaintiff under the plan on his death. *See Whitehead*, 2013 WL 3542686, at *4 (the plan provided, "You will only be insured for the benefits: for which You become and remain eligible; . . . and which are in effect."). Although opinions from federal

courts may be relied on as persuasive authority, Texas appellate courts are obligated to follow only higher Texas courts and the United States Supreme Court. *See Builders FirstSource, Inc. v. White*, No. 05-22-00724-CV, 2023 WL 2674083, at *2 n.1 (Tex. App.—Dallas Mar. 29, 2023, no pet.) (mem. op.) (citing *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993)). We do not find *Medvigy* or *Whitehead* pertinent here. Those opinions—involving the federal Employee Retirement Income Security Act and insurance provisions and coverage issues involving a divorced spouse and a deceased person—are remote from the context, issues, and contract provisions involved in this lawsuit.

Although appellant's argument hinges on section 5's three isolated words—"to become eligible"—we must construe the amended NSD agreement as a whole. *See Nettye Engler Energy, LP v. BlueStone Nat. Res. II, LLC*, 639 S.W.3d 682, 690 (Tex. 2022). When construing contracts, our objective is to ascertain the true intentions of the parties as expressed in the writing itself, beginning with the instrument's express language. *See id.* at 689. In doing so, we consider the entire writing and attempt to harmonize the provisions so all are given effect and none is rendered meaningless. *See id.* at 690. We afford contract language its plain, grammatical, and ordinary meaning unless doing so would clearly defeat the parties' intentions or the instrument shows the parties used the terms in a different or technical sense. *See id.*

Appellant's argument fails to consider all the terms of the amended NSD agreement that relate to whether the parties intended its forfeiture provision to terminate on December 31, 2017. *See id.*; *see also Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023) ("Contract terms cannot be viewed in isolation; each provision must be considered in the context of the contract as a whole."). For example, section 4 of the amended NSD agreement provides, "NSD understands that she must immediately come into compliance with the terms of her NSD agreement, as amended herein, and must continue to comply with the terms through December 31, 2017, *and longer as discussed in paragraph 5 below*." (Emphasis added.) Additionally, section 5 of the amended NSD agreement provides that appellant acknowledges and agrees to comply with obligations "set forth in her [NSD] Agreement *that survive termination of her* [NSD] *Agreement* and the obligations set forth in the Family Security Program agreement." (Emphasis added.) The plain, grammatical, and ordinary meaning of these provisions demonstrate an intent that appellant's obligations under the continuing obligations of the NSD agreement and FSP agreement do not terminate on December 31, 2017, as appellant argues, but instead continue in effect thereafter. *See Nettye Engler Energy, LP*, 639 S.W.3d at 690. Moreover, appellant's argument would render "meaningless" the above-emphasized terms of section 4 and 5. *See id.*; *see TM Prods., Inc. v. Nichols*, 542 S.W.2d 704, 708 (Tex. App.—Dallas 1976, no pet.) (a presumption exists that every provision of a contract was included for a particular purpose, and courts must

presume the parties intended every word to have meaning, effect, and purpose unless it is plainly repugnant to the meaning of the overall contract).

Additionally, the amended NSD refers to the FSP agreement. Accordingly, we construe the amended NSD agreement and the FSP agreement together to determine whether the parties expressed an intent that the forfeiture provision of the amended NSD agreement terminated December 31, 2017. *See Gray & Co. Realtors v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.) (instruments pertaining to the same transaction may be read together to ascertain the parties' intent). The FSP agreement's sections 5.1 and 5.2 provide, "The first payment of a Participant's monthly . . . retirement benefit shall be made as of the Participant's . . . retirement date."[3] Additionally, section 10.2 of the FSP agreement—addressing "continuing obligations"—states, "Participant agrees to faithfully observe and comply with the following [continuing] covenants and agreements for so long as Participant is entitled to receive benefits under the Plan[.]" (Emphasis added.) Taken together, these FSP provisions express the intent that the FSP agreement's continuing obligations were ineffective until December 31, 2017, when appellant retired, and became effective thereafter. Consequently, it would be unreasonable to conclude that the parties intended the amended NSD agreement's forfeiture clause to terminate on December 31, 2017—just when appellant's

---

[3] As noted, appellant's retirement date was December 31, 2017.

–12–

obligation to observe the FSP agreement's continuing obligations, expressly subject to forfeiture under the amended NSD agreement, were to begin.

Notably, appellant's "to become eligible" argument fails to squarely address the language of the amended NSD agreement's forfeiture provision, which states,

> A breach of these material provisions [the amended NSD agreement, the continuing obligations of the NSD agreement, and the FSP agreement] will result in NSD forfeiting any right to payment under the Family Security Program agreement as described herein.

(Emphasis added.) The forfeiture provision does not express an intent that it terminates December 31, 2017. Rather, we conclude the plain and ordinary language of the forfeiture clause itself expresses the intent that appellant will not remain eligible to receive FSP payments upon breach of, among other things, the FSP agreement's continuing-obligations provisions. *See Nettye Engler Energy, LP*, 639 S.W.3d at 689–90; *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 523 (Tex. App.—Dallas 2014, no pet.) (a court may not write into a contract terms the parties did not insert or add terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning). This conclusion harmonizes and gives effect to relevant provisions of the amended NSD agreement and the FSP agreement described above. *See Nettye Engler Energy, LP*, 639 S.W.3d at 690.

We adhere to the above-stated rules of contract construction and conclude the amended NSD agreement can be given a definite and certain legal meaning. *See id.*

–13–

We conclude as a matter of law that the forfeiture provision contained in the amended NSD did not terminate on December 31, 2017, but instead remained in effect at the time appellant sent the April 16, 2018 email.

<u>Appellant Fails To Demonstrate Ambiguity</u>

Appellant next asserts the amended NDS is ambiguous.[4] Whether a contract is ambiguous or not is a question of law. *See id*. A contract subject to more than one reasonable interpretation is ambiguous, giving rise to a fact issue regarding the parties' intent. *See id.* If a contract has a certain and definite meaning, the contract is unambiguous, and we will construe it as a matter of law and enforce it as written. *See id*. Mere disagreement regarding contractual interpretation does not create ambiguity. *See URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018).

We disagree with appellant's assertion that section 5 of the amended NSD agreement is ambiguous. First, we concluded above that the amended NSD can be given certain and definite meaning. Consequently, the amended NSD agreement is

---

[4] Appellant states her ambiguity assertion in three sentences, as follows,

> Finally, even if—*assuming for the sake of argument only*—Section 5 of the amended NSD agreement is ambiguous on whether forfeiture of FSP benefits is a remedy for breaches occurring after December 31, 2017, the evidence still does not support a finding that [appellant] intentionally relinquished a known right. Ambiguity means a contract provision is susceptible to two or more reasonable interpretations. *Am. Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). Axiomatically, a party cannot be charged with knowing and understanding the legal consequences of an ambiguous contract clause—and thus intentionally relinquishing a known right by agreeing to it—if the clause is susceptible to one interpretation that results in a loss of the allegedly waived right and one that does not.

(Emphasis added.)

not ambiguous, and we construe it as a matter of law and enforce it as written. *See Nettye Engler Energy, LP*, 639 S.W.3d at 690. Second, we do not accept appellant's invitation to simply assume ambiguity. Appellant fails to argue why any specific term of the amended NSD is subject to more than one "reasonable" interpretation and therefore is ambiguous. *See id*. Instead of demonstrating ambiguity, appellant presents mere disagreement about contractual interpretation. *See URI, Inc.*, 543 S.W.3d at 763 (mere disagreement regarding contractual interpretation does not create ambiguity).

<u>The Evidence Sufficiently Supports the Jury's Answer on Waiver</u>

Appellant finally argues the evidence is legally insufficient or, in the alternative, factually insufficient to support the jury's answer on waiver.

Jury Question 4 asked,

Was [appellee's] failure to comply with the FSP Agreement excused?

> A failure to comply by [appellee] is excused if compliance is waived by [appellant].

> Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Answer "Yes" or "No."

Answer: Yes

We understand appellant to make two specific arguments. First, appellant argues, "*[A]s a matter of law*, executing the NSD amendment did not waive Jamie's right to benefits under the FSP—the forfeiture clause no longer applied [after her

–15–

retirement on December 31, 2017].” (Emphasis added.) However, we concluded above that the forfeiture clause did not terminate December 31, 2017, and instead remained in effect when appellant sent the April 16, 2018 email. Consequently, appellant’s first argument is baseless.

Second, appellant argues the evidence “does not support” the jury’s waiver finding because, “Axiomatically, a party cannot be charged with knowing and understanding the legal consequences of an ambiguous contract clause—and thus intentionally relinquishing a known right by agreeing to it—if the clause is susceptible to one interpretation that results in a loss of the allegedly waived right and one that does not.” However, we rejected above that appellant’s argument that section 5 and its forfeiture clause were ambiguous. Consequently, appellant’s insufficiency argument based on asserted ambiguity is groundless. Appellant makes no additional argument concerning the legal or factual sufficiency of the evidence to support the jury’s answer on waiver.

Nonetheless, we review the record under the above-stated standards of review to determine whether the evidence is legally or factually insufficient to support the jury’s answer to the waiver question. In the court below, the amended NSD agreement and the FSP agreement were admitted into evidence. The amended NSD agreement provided that appellant’s failure to comply with the FSP agreement’s continuing obligations would result in forfeiture of FSP payments. Appellant testified that she had read the amended NSD agreement’s forfeiture provision and

that she understood the meaning of forfeiture. She acknowledged she understood that once she retired as an NSD, she had to comply with the FSP agreement's continuing obligations "to remain" eligible to receive FSP payments. She testified she understood that if she breached the FSP agreement's continuing obligations, then she would not be entitled to FSP payments. In addition, the jury found in its answer to jury question 2 that appellant failed to comply with the FSP agreement by sending the April 16, 2018 email. Because appellant does not argue the evidence was insufficient to support the jury's answer to Jury Question 2, this Court is bound by it. *See Hughes v. Pearcy*, No. 03-10-00319-CV, 2014 WL 701453, at *6 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op.). Consequently, we conclude the record contains some evidence that appellant waived the right to complain about forfeiture of her FSP payments by (1) agreeing in the amended NSD agreement that FSP payments would be forfeited if she failed to comply with the FSP agreement and (2) subsequently failing to comply with the FSP agreement. *See Graham Cent. Station, Inc.*, 442 S.W.3d at 263. Moreover, we conclude the evidence supporting the jury's waiver finding is not so weak as to make the verdict clearly wrong and manifestly unjust. *See Ins. All.*, 452 S.W.3d at 73.

We overrule appellant's first issue on appeal.[5]

---

[5] Due to our disposition of appellant's first issue on appeal, we need not and do not address appellant's second issue on appeal.

## Conclusion

We affirm the trial court's judgment.

/Bill Pedersen, III/

BILL PEDERSEN, III
JUSTICE

230001F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMIE CRUSE VRINIOS, Appellant

No. 05-23-00001-CV          V.

MARY KAY, INC., Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-05560. Opinion delivered by Justice Pedersen, III. Justices Partida-Kipness and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MARY KAY, INC. recover its costs of this appeal from appellant JAMIE CRUSE VRINIOS.

Judgment entered this twenty-third day of August, 2024.